**PAINEWEBBER INCORPORATED, Petitioner,**

v.

**James M. PITCHFORD and J & F Supermarkets, Inc. Profit Sharing Plan, Respondents.**

**PAINEWEBBER INCORPORATED, Petitioner,**

v.

**Joseph BUECHOT, Ray Conway, James English, Key Trust, Gerald Kinder, Mr. and Mrs. William Neidermeyer, Pat Rutherford, Mr. and Mrs. Christopher Skambis, Steve Slack, and Mr. and Mrs. Charles Vedrody, Respondents.**

**PAINEWEBBER INCORPORATED, Petitioner,**

v.

**Bert H. BISHOP and M. Elizabeth Bishop, Respondents.**

Nos. 88 Civ. 4400, 88 Civ. 4401, 89 Civ. 3227.

United States District Court, S.D. New York.

Sept. 14, 1989.

Sarah G. Anderson, PaineWebber Inc. Legal Dept., New York City, for petitioner.

Carl Kuntz, Brandeis, Bernstein, Pollack & Greene, New York City, Stuart Goldberg, Goldberg & Schneider, Robert Dyer, Duckworth, Allen, Dyer & Poppelt, Orlando, Fla., for respondents.

## OPINION AND ORDER

CONBOY, District Judge:

These cases arise out of similar factual situations and require the same legal analysis to resolve the pending motions. Accordingly, although the actions are not formally consolidated, we will treat all of the motions submitted in each action in this omnibus opinion. The common issue in all three cases, the facts of each which will be further elaborated upon below, concerns the proper arbitral forum for lawsuits brought by customers of brokerage houses against the broker and/or the brokerage house.

## I. FACTUAL BACKGROUND

### A. 88 Civ 4400—Pitchford

James M. Pitchford, is a resident of Winter Garden, Florida and is the President and principal owner of J & F Supermarkets, Inc., a Florida corporation with its principal office in Winter Garden, Florida. Verified Petition for Removal, Ex. A, "American Arbitration Association Complaint" at ¶ 1. For simplicity's sake, we will refer to these two respondents as the "Pitchford Claimants." PaineWebber is a member of the American Stock Exchange. This action arises out of separate accounts with the PaineWebber branch in Orlando, Florida: an individual account of Mr. Pitch-

ford and the account of J & F Supermarkets, Inc. Profit Sharing Plan. *Id.*, ¶ 2.

For his individual account, Pitchford signed a customer agreement with PaineWebber which includes a clause requiring the arbitration of disputes arising out of the customer agreement. The clause states:

Any controversy between us arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the New York Stock Exchange, American Stock Exchange, National Association of Securities dealers or where appropriate, Chicago Board Option Exchange or Commodities Futures Trading Commission, as I may elect. I authorize you if I do not make such election, by registered mail addressed to you at your main office within fifteen (15) days after receipt of notification from you requesting such election, to make such election in my behalf.

Claimants' Memorandum of Law in Support of Motion for Summary Judgment, Exhibit A, ¶ 19.[1] The J & F Supermarkets, Inc. Profit Sharing Plan account has no arbitration clause with PaineWebber. Verified Petition for Removal, Ex. A, "American Arbitration Association Complaint" at ¶ 2(c); PaineWebber's Memorandum of Law in Support of Cross-motion for Summary Judgment at 3 n. 1.

On February 12, 1988, the Pitchford Claimants filed a complaint and a demand for arbitration against PaineWebber with the American Arbitration Association ("AAA") for federal and Florida securities law violations, misrepresentation, negligence and gross negligence and breach of fiduciary duty. These Claimants allege that a PaineWebber securities research analyst, Peter Butler, acquired a substantial number of shares of common stock of Memory Metals, Inc. as part of a scheme to inflate the market price of the stock. Verified Petition for Removal, Ex. A, "Ameri-

---

1. For the purposes of the motions currently pending, the clause providing for arbitration where appropriate under the rules of the Chicago Board Option Exchange or Commodities Fu-

tures Trading Commission appears to be irrelevant. Accordingly, we will henceforth refer to the clause as providing only three forums.

can Arbitration Association Complaint" at ¶¶ 9–11. They further allege that the analyst knowingly misrepresented the company's financial prospects and touted the stock to convince customers of PaineWebber to purchase shares of the stock and to convince retail brokers to sell the stock to their customers, including the claimants. *Id.*, ¶¶ 11–15. When the market price of the stock rose as a result of the analyst's actions, company insiders sold their shares in large quantities. *Id.*, ¶ 17. The scheme was uncovered in *Barron's*, a national investment publication, and the price of the stock plummeted. *Id.*, ¶¶ 23–24.

The Pitchford Claimants seek to have the arbitration hearing before the AAA based upon PaineWebber's status as a member of the American Stock Exchange ("AMEX"). They rely on Sections 1 and 2 of Article VIII of the AMEX constitution to support the AAA as the forum for arbitration which provide:

> Sec. 1. Members ... shall arbitrate all controversies arising in connection with their business ... between them and their customers as required by any customer's agreement or, in the absence of a written agreement, if the customer chooses to arbitrate....

> \*　　\*　　\*　　\*　　\*　　\*

> Sec. 2. Arbitration shall be conducted under the arbitration procedures of this Exchange, except as follows:

> \*　　\*　　\*　　\*　　\*　　\*

> (c) if any of the parties to a controversy is a customer, the customer may elect to arbitrate before the American Arbitration Association in the City of New York, unless the customer has expressly agreed, in writing, to submit only to the arbitration procedure of the Exchange.

PaineWebber's Cross–Motion for Summary Judgment at 4.

As part of their demand for arbitration by the AAA, the Pitchford Claimants requested that Orlando, Florida be designated as the location for the arbitration hearing. On or about May 26, 1988, PaineWeb-

ber commenced an action against the Pitchford Claimants in New York state court to oppose the AAA's designation of Orlando, Florida as the locale for the arbitration hearing and to compel the Claimants to submit their claims against PaineWebber to arbitration before the AAA in New York City. On or about June 21, 1988, Claimants removed the state court action to this Court.

On September 19, 1988, Claimants moved for summary judgment to compel arbitration before the AAA in Orlando, Florida. On October 11, 1988, PaineWebber cross-moved for summary judgment to compel arbitration before the AAA in New York City or in the alternative, to compel arbitration of the individual Pitchford account, in accordance with his arbitration agreement with PaineWebber, before the New York Stock Exchange, Inc. ("NYSE"), American Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. ("NASD") and to compel arbitration of the J & F Supermarkets, Inc. Profit Sharing Plan account before the AAA in New York City as required by Article VIII, Section 2(c) of the AMEX constitution.

Over the past nine months PaineWebber has submitted supplemental argument and authority for the Court to consider regarding its cross-motion for summary judgment. These supplemental submissions strongly indicate, although they do not explicitly so state, that PaineWebber has narrowed the relief sought in its cross-motion as against the individual account to encompass only the second "alternative" as expressed above—to compel arbitration in one of the forums listed in the arbitration clause. As to the customers without a customer agreement (the profit sharing plan), PaineWebber apparently concedes that the AAA is an appropriate forum, but its position is that the proper venue is New York City rather than Florida. Accordingly, we will consider only the "alternative" request for relief (as it is styled in Paine Webber's motion) to be the present litigation position of PaineWebber, and we deny the Claimants' motion to strike the supplemental submissions.

### B. 88 Civ. 4401—Buechot

The underlying facts of the claims in this action are identical to those in Pitchford, No. 88 Civ. 4400. The only difference between the actions is the Claimants against whom PaineWebber has brought these proceedings.

On or about March 29, 1988, all claimants in this action, the "Buechot Claimants," jointly filed a demand for arbitration against PaineWebber with the AAA for federal and Florida securities law violations, misrepresentation, negligence and gross negligence and breach of fiduciary duty based on the same alleged actions by PaineWebber analyst Peter Butler and the Memory Metals, Inc. stock. All of the Buechot Claimants purchased stock in Memory Metals, Inc. pursuant to the allegedly fraudulent scheme by Butler. On September 30, 1988, the Buechot Claimants moved for summary judgment to compel arbitration before the AAA in Orlando, Florida.

The Buechot Claimants were customers of four of PaineWebber's Florida offices: Winter Park, Orlando, West Palm Beach and Boca Raton. The claimants reside as follows: Joseph Beuchot is a resident of Maitland, Florida; Ray Conway is a resident of Windermkere, Florida; Key Trust Company of Florida, N.A. has an office in Orlando, Florida; Gerald Kinder is a resident of Ormond Beach, Florida; William and Toni Neidermeyer are residents of Richmond, Virginia; Jerry Rickman is a resident of Winter Park, Florida; Pat Rutherford is a resident of Columbus, Ohio; Christopher Skambis is a resident of Orlando, Florida; Steve Slack is a resident of Winter Park, Florida; Charles and Evelyn Vedrody are residents of Broadview Heights, Ohio; and Kevin and Evelyn Warren are residents of Apopka, Florida. Verified Petition for Removal, Ex. A, "American Arbitration Association Complaint" at ¶ 1.

The papers submitted in this action, unfortunately, are not very well focussed and are, in many ways, sadly deficient. Because of the conflict and inconsistency in both parties' papers as to which Claimants are actually involved in the action and which Claimants have signed customer agreements with PaineWebber with the same arbitration clause as delineated in the Pitchford section, *supra*, we are compelled to make certain assumptions. To reiterate, the arbitration agreement states that any controversy shall be settled by arbitration, in accordance with the rules of the NYSE, AMEX, or NASD. The Claimants state that the individual accounts of Beuchot, English, Rickman, Rutherford, Slack, and Mr. and Mrs. Warren have customer agreements with the arbitration clause. Verified Petition for Removal, Ex. A, "American Arbitration Association Complaint" at ¶ 2(b). The Claimants have offered copies of such agreements as evidence. Claimants' Motion for Summary Judgment, Exhibit A. The Claimant's state that the individual accounts of Conway, Key Trust, Neidermeyer, Skambis and Vedrody have no customer agreements which include an arbitration clause. Verified Petition for Removal, Ex. A, "American Arbitration Association Complaint" at ¶ 2(c).

PaineWebber states that Beuchot, English, Neidermeyer, Rutherford, Skambis, Slack, and a Dr. and Mrs. Denner have customer agreements which include an arbitration clause. PaineWebber's Notice of Cross–Motion for Summary Judgment. On October 11, 1988, PaineWebber cross-moved for summary judgment to compel arbitration of these accounts before the AAA in New York City or in the alternative (as discussed above), to compel arbitration of these accounts pursuant to their customer agreements before the NYSE, AMEX, or NASD. In the same Notice of Cross–Motion, PaineWebber states that claimants Conway, Key Trust, Kinder, and Mr. and Mrs. Vedrody should be compelled to arbitrate before the AAA in New York City as required by Article VIII, Section 2(c) of the AMEX constitution as they do not have customer agreements with arbitration clauses.[2]

---

2. We note that only PaineWebber's Notice of Cross–Motion, and not the motion itself nor the original memorandum submitted in support,

The inconsistencies in the papers as to who signed a customer agreement with an arbitration clause and who is actually involved in this action are summarized as follows. PaineWebber claims that the Neidermeyer and Skambis accounts have customer agreements with arbitration clauses. The Buechot Claimants specifically state in their complaint with the AAA that these accounts do not have customer agreements with arbitration clauses. Verified Petition for Removal, Exhibit A, "American Arbitration Association Complaint" ¶ 2(c). Furthermore, although the Claimants have offered as evidence in support of their motion copies of those accounts where the customer signed an agreement with an arbitration clause, the Neidermeyer and Skambis accounts are not included in this group. Because PaineWebber has not offered any evidence beyond the merely conclusory statements to support their claim that these parties have an agreement with an arbitration clause, the Court will assume that these two accounts do not have customer agreements with arbitration clauses.

The account belonging to Gerald Kinder is listed by PaineWebber in its Notice of Cross–Motion for Summary Judgment as not having a customer agreement with an arbitration clause. The Claimants have failed to state whether the Kinder account does or does not have a customer agreement with an arbitration clause.[3] Because of the paucity of evidence submitted with reference to this account, the Court can not, at this time, make the determination under which category this account falls. Accordingly, the action as against Kinder can not be assessed on this motion.

Another discrepancy exists with reference to both the Rickman and Warren accounts. These accounts are listed and discussed in the AAA Complaint as having customer agreements with arbitration clauses. Verified Petition for Removal, Exhibit A, "American Arbitration Association Complaint" ¶ 2(c). Their respective customer agreements are appended to the AAA Complaint. However, neither Mr. Rickman's nor Mr. and Mrs. Warren's name appears in the caption of the Verified Petition for Removal, or anywhere else that we can find, in either parties' papers submitted to this Court. As such, the Court can make no determination as to these accounts at this time as it is not clear that these claimants are formally in this action.

Last, PaineWebber lists in its Notice of Cross–Motion for Summary Judgment an account of a "Dr. and Mrs. Denner." An account in the name of Denner is not listed in the original complaint filed with the AAA nor in any other paper submitted by either party. On this basis, we conclude that "Dr. and Mrs. Denner" are not formally claimants in this lawsuit.

With respect to the rest of the claimants in this action, they have claims that require essentially the same analysis as those in the Pitchford action, and, accordingly, the supplemental argument and authority provided by PaineWebber are also applicable here. In other words, we will accept PaineWebber's change in its litigation position as to those claimants with arbitration clauses. See section I, A, *supra.*

### C. *89 Civ 3227—Bishop*

From the woefully inadequate papers submitted by both parties, it is extremely difficult to discern the facts of this action. The claimants here, Bert and Elizabeth Bishop, are residents of Bradenton, Florida. Respondents' [Claimants'] Answer to Motion to Stay AAA Arbitration, Exhibit C. The Bishop Claimants signed two customer agreements with PaineWebber, both of which contain arbitration clauses. The record is devoid of any indication of the location of the PaineWebber office with, and through, which the Bishops conducted

---

contains a list of the claimants with and without arbitration agreements.

**3.** Although the Mr. Kinder and his wife are mentioned in the Petition for Removal, in the original complaint filed before the AAA only

Mr. Kinder is listed as a plaintiff and the Kinder Account is not included in either the group with a customer agreement providing for arbitration or without an arbitration agreement as discussed in the AAA Complaint.

their business. The arbitration clauses in the agreements are exactly the same as the clause as quoted above in section I, A, *supra*, of this opinion, requiring disputes relating to the customer agreement to be resolved by arbitration according to the rules of the NYSE, AMEX or NASD. Petition to Compel Arbitration, Ex. A, ¶ 19.

In late October, 1988, the Bishop Claimants filed a demand for arbitration with the AAA in New York City pursuant to Article VIII, Section 2(c) of the AMEX constitution. PaineWebber's Memorandum of Law in Support of Petition to Compel Arbitration at 1. These claimants allege that "their brokerage account was subjected to fraudulent broker-dealer practices and mismanagement." Claimants' Answer to Motion to Stay AAA Arbitration, Exhibit B, "AAA Demand for Arbitration." There is no elaboration on the nature of the claim other than this simple description typed into the AAA Demand for Arbitration.

The procedural history of this action is difficult to trace. It appears that on or about December 2, 1988, PaineWebber filed a petition in New York State Supreme Court to stay arbitration before the AAA in New York City and to compel arbitration before either the NYSE, AMEX or NASD as designated in their customer agreement with the Bishops. See Claimants' Answer to Motion to Stay AAA Arbitration, Exhibit A. The Bishops served a Verified Answer in opposition to the motion to compel. On January 6, 1989, PaineWebber filed a Verified Response to Respondents' Answer in Opposition to Petitioner's Motion to Compel Arbitration. The Bishop Claimants refer to this as a second petition, see Claimants' Answer to Motion to Stay AAA Arbitration ¶ 3, however, it seems that this filing was part of the original petition. Furthermore, PaineWebber's supporting memorandum in this action seems to indicate that there was only one petition filed. To further confuse the matter, the clerk of that court apparently checked off boxes on a form stating that PaineWebber's petition was defective for the following reasons: "Proof of purchase of index number is required" and "Proof of service of petition and RJI required by Uniform Rule 202.6." Claim-

ant's Answer to Motion to Stay AAA Arbitration, Exhibit C. However, it is unclear at this time whether this action by the clerk was taken before or after PaineWebber's January 6, 1989 filing with that court as there is no date on the form nor is there an affidavit submitted in this action detailing the prior proceedings. Indeed, it is also unclear whether any action was taken by PaineWebber to rectify the deficiencies. In any event, PaineWebber voluntarily withdrew their petition on March 1, 1989. PaineWebber's Memorandum of Law in Support of Petition to Compel Arbitration at 1. Claimants assert that due to the frivolous nature of PaineWebber's "second petition" and due to the Claimants threat of sanctions, PaineWebber withdrew its petition. Claimants' Answer to Motion to Stay AAA Arbitration ¶¶ 4 & 5.

On May 9, 1989, PaineWebber filed with this Court a Petition to Compel Arbitration before either the NYSE, AMEX, or NASD pursuant to the terms of their customer agreements with the Bishops. The Bishops answered the petition, and requested that sanctions be granted against PaineWebber. Before the petition could be adjudicated, PaineWebber moved for a preliminary injunction enjoining the Bishops from proceeding with the AAA arbitration hearing scheduled for September 18, 1989 until the resolution of the underlying petition to compel arbitration before one of the self-regulatory organizations listed in the customer agreement. In light of the analysis below, the preliminary injunction motion is moot.

## II. LEGAL ANALYSIS

As stated above, all three actions, Pitchford, Beuchot and Bishop, require an identical analysis of the law. After analyzing the law, we will then apply it to the particular facts of each action. We will divide this analysis between those claimants who signed customer agreements with an arbitration clause and those who have an agreement without such a clause. We should again point out how PaineWebber's litigation position with respect to the Buechot and Pitchford actions changed in the

course of this litigation. PaineWebber's first position was that arbitration before the AAA was proper, even for those claimants with arbitration clauses, but it contended that the arbitration had to take place in New York City. At the time, its "alternative" position was that arbitration should be compelled as to those customers with arbitration clauses in one of the three forums specifically named in the clauses, and for those without arbitration clauses, before the AAA in New York City. Its position was then amended, as demonstrated by the supplemental submissions which we declined the Claimants' invitation to strike, such that it now argues that the arbitration before the AAA is not an option for those with arbitration clauses limiting the available forums. However, as to those claimants without arbitration clauses it still appears to be PaineWebber's position that arbitration before the AAA may be appropriate, however, the brokerage continues to contend that the venue must be New York City.

In the Pitchford and Buechot actions, both the Claimants and PaineWebber have moved for summary judgment on their respective petitions/motions to compel. It is clear that with the exception of the factual discrepancies in the Kinder, Warren, and Rickman accounts described above on which we have reserved decision, there are no genuine issues of material fact which preclude summary judgment. Fed.R.Civ.P. 56.

In the Bishop action, PaineWebber has proceeded by petition to compel only. In considering whether to stay its proceedings and compel arbitration, the Court must determine that there is an agreement to arbitrate; that the claims involved are arbitrable; and that the right to arbitrate has not been waived. *Brener v. Becker Paribas Inc., A.G.*, 628 F.Supp. 442, 446 (S.D.N.Y. 1985). These standards are unquestionably satisfied with respect to the Bishop Claimants.

A. *Claimants Who Signed Customer Agreements With An Arbitration Clause*

These actions appear on our docket in the wake of *Shearson/American Express, Inc.*

*v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). In *McMahon*, the Supreme Court upheld customer agreements providing for arbitration of federal claims raised under the Securities Exchange Act of 1934 and under the RICO statutes. More recently, the Court, in *Rodriguez de Quijas v. Shearson/American Express, Inc.*, —— U.S. ——, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), upheld an agreement to arbitrate claims arising under the provisions of the Securities Act of 1933.

Together, *McMahon*, indirectly, and *Rodriguez de Quijas*, explicitly, overruled the outmoded presumption of disfavoring arbitration found in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In fact, the Court placed great emphasis on the strong federal policy favoring arbitration, and pointed out that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "Act"), was intended to "revers[e] centuries of judicial hostility to arbitration agreements," *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 511, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974), by "plac[ing] arbitration agreements 'upon the same footing as other contracts.'" *Scherk*, 417 U.S. at 511, 94 S.Ct. at 2453 (quoting H.R.Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)). See *McMahon*, 482 U.S. at 225–26, 107 S.Ct. at 2337. The Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1970). The Act further provides that a federal district court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement, 9 U.S.C. § 3, and it authorizes a court to issue an order compelling arbitration if there has been a "failure, neglect or refusal" to comply with the arbitration agreement, 9 U.S.C. § 4. Thus, "absent a well-founded claim that an arbitration agreement resulted from the sort of fraud or excessive economic power that 'would provide grounds "for the revocation of any contract," ' " *McMahon*, 482 U.S. at 226, 107 S.Ct. at 2337 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth,*

*Inc.,* 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985) (quoting *Wilko v. Swan,* 346 U.S. 427, 432, 74 S.Ct. 182, 185, 98 L.Ed. 168 (1953))), we must "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985). The Act "leaves no place for the exercise of discretion by a district court, but instead mandates the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Byrd,* at 218, 105 S.Ct. at 1241.

Thus, since *McMahon,* customers and brokers alike are largely limited to resolving their disputes in arbitration. Accordingly, the issue currently before us as to which arbitral forum is appropriate is of increased importance. The customers, who we have labelled the claimants, believe that a so-called "independent body" such as the American Arbitration Association is the appropriate forum. On the other hand, the brokerage (PaineWebber) requests that the arbitrations in issue take place at one of the forums listed in the arbitration provisions of the customer agreements. These named forums, the NYSE, the NASD and the AMEX, are self-regulatory organizations (SROs) which are overseen and regulated by the Securities and Exchange Commission (SEC). Significantly, the AAA is not regulated by the SEC.

The customer agreements in issue here limit arbitration "in accordance with the rules, then obtaining," of the NYSE, AMEX or the NASD. The Claimants, however, have elected to arbitrate before the AAA, a forum not provided for in the agreement. The Claimants contend that the words in their agreements, with specific emphasis on the "rules" of the listed SROs, permit them to look to the constitution of the AMEX as a "rule" of that SRO. The Claimants, therefore, rely on Article VII, Section 2(c) of the AMEX constitution (as set out earlier), the so-called "AMEX Window," to elect arbitration before the AAA. Thus, the question is, in essence, reduced to whether the constitution of the AMEX is a "rule" of the AMEX, such that

forums specifically designated in the arbitration agreements may be easily circumvented. For the reasons set forth below, we believe that the constitution is not a rule, and, therefore, all of the claimants with arbitration clauses in their customer agreements may not arbitrate their claims before the AAA.

We recognize that this issue of the "AMEX Window" has not yet been decided in this Circuit, and has only recently been resolved in a few others. We find the reasoning of these courts persuasive and adopt it.

The relevant facts of *Hybert v. Shearson Lehman/American Express Inc.,* No. 84 C 10327, slip op. (N.D.Ill. June 7, 1989) (available on Westlaw 1989 WL 64450), are almost indistinguishable from the instant case. There, two customers, who signed brokerage contracts with arbitration clauses nearly identical to those in issue in the case at bar, elected arbitration by the AAA even though the contracts they signed did not name the AAA as an electable forum. *Id.* at 9. The Claimants here proffered the same argument as the customers in that case, asserting that the constitutional provision in question is a "rule" of the organizations designated in their agreement and, thus, their selection of the AAA is in accordance with the arbitration clause.

We believe that this argument is incorrect. As it was very aptly stated in *Hybert,*

> [t]he contract [the Claimants] signed describes three different arbitration systems from which the customer may choose. The 'rules' referred to in the contract, we believe, refer to the arbitration procedures of the three organizations, not to their constitutions or other general provisions for resolving member disputes. The intent expressed in the language of the contract, we find, is to create a choice of three arbitration forums, and it is that intent we must effectuate.

*Id.* at 10. We, too, conclude that the references to the "rules" means the arbitration procedures of the three electable organizations, and not their constitutions. It is

certainly more logical to assume that the forums named in the arbitration clause are the only electable forums intended by the parties. The agreement was specifically limited to these forums—SROs all. Each of these SROs, contrary to the AAA, has "adopted the same Uniform Code of Arbitration ... as recommended by the Securities Industry Conference on Arbitration (SICA)." *Roney & Co. v. Goren*, 875 F.2d 1218, 1220–21 (6th Cir.1989). Accordingly, if we held that the constitution of the AMEX is a "rule," we would be creating a fourth electable forum, a result we believe was not envisioned by the either the drafters of the clause or the parties.[4]

Further, as the Sixth Circuit recently stated, "[w]hen Congress enacted the Arbitration Act making arbitration agreements enforceable, *it surely did not intend that the parties be able to disregard selected contractual obligations willy-nilly in order to chose an arbitral forum more convenient or more suited to a party's particular needs.*" *Roney*, 875 F.2d at 1223 (emphasis added). Thus, a forum selection clause in an arbitration agreement, just like any other contractual provision, is entitled to complete enforcement absent a showing of adhesion. *McMahon*, 482 U.S. at 226, 107 S.Ct. at 2337, *Scherk*, 417 U.S. at 518–20, 94 S.Ct. at 2456–58; *Roney*, 875 F.2d at 1223. It is indisputable that no such showing has been made here by the Claimants.

There is one other basis for compelling arbitration in one of the three forums specifically designated in the arbitration provision of the customer agreement. In *Creative Securities Corp. v. Bear Stearns & Co.*, 671 F.Supp. 961 (S.D.N.Y.1987), *aff'd mem.*, 847 F.2d 834 (2d Cir.1988), Judge Ward, in a well-reasoned opinion, found that private agreements of the parties, such as the customer agreements here in issue, "can validly modify the arbitration provisions of [an SRO] as they apply to the parties to such agreements." *Id.* at 966–67. Accordingly, the arbitration agreements between PaineWebber and its customers may be said to override the AMEX

constitution's provisions relating to arbitration before the AAA, such that the parties intended only to provide for arbitration before an SRO. The Claimants have not demonstrated that they will be unduly prejudiced by proceeding to arbitration in one of the forums provided for in the agreements. Indeed, these forums were selected by each of the Claimants upon the signing of the customer agreement. In addition, each claimant is given the right to elect one of three forums. Accordingly, the latest supplemental submission by counsel for some of the Claimants, received by this Court on September 8, 1989, directing our attention to SEC litigation release No. 12198, dated Aug. 7, 1989, [Current Binder] Fed.Sec.L. Rep. (CCH) ¶ 84,437 at 80,377, is not to the contrary. The release, which was specifically adopted by the SEC in order to legislate away the result in the *Roney* case, *see id.*, prohibits arbitration agreements which limit customers to a *single* arbitration forum. According to the release, "agreements may not be used ... to limit SRO forums otherwise available to parties." *See id.* Here, we are not in any way preventing the claimants from availing themselves of an SRO forum, and therefore, the letter as well as the spirit of the SEC release are satisfied.

Accordingly, in light of the above analysis, we hereby close the "AMEX Window" and direct each of the Claimants to elect one of the forums specified in his or her customer agreement within 20 days of the date of this order or forfeit his or her right to a elect a forum.

B. *Those Claimants Without Customer Agreements or Without Arbitration Clauses in Their Agreements*

■ This section of the opinion is germane only to certain of the claimants in the Pitchford and Buechot actions. PaineWebber states in one of its memoranda submitted in the Pitchford action that it and J & F Supermarkets Profit Sharing Plan, Inc., a Claimant in the Pitchford action,

---

**4.** We also note that the SRO forums are SEC approved and regulated arbitral forums. *McMahon*, 482 U.S. at 233–34, 107 S.Ct. at 2341.

Hence, we assume they are more experienced than the AAA in dealing with the types of disputes in question.

"had no arbitration clause." PaineWebber's Memorandum in Support of Cross-Motion for Summary Judgment at 3 n. 1. PaineWebber then goes on to admit, without citation to any specific authority, that "under the rules and constitution[s] of the various exchanges, a member firm is required to submit to arbitration before *that exchange* at the request of a public customer." *Id.* (emphasis in original). There is no other mention of the claimant without the arbitration clause in the rest of PaineWebber's memorandum, which concentrates on the customer with the arbitration clause in his customer agreement.[5]

It would appear that PaineWebber's statement quoted above regarding the customer's ability to demand arbitration before a member exchange is correct, at least with reference to the AMEX, the SRO relevant here. See American Stock Exchange Constitution, Article VII, ¶ 9062. Accordingly, claimants without arbitration agreements can avail themselves of the AMEX Window provision in the AMEX constitution if they so choose.[6]

■ By allowing the arbitrations of those customers without arbitration clauses to proceed at the AAA, the question that then arises is whether the provision allowing for arbitration "before the [AAA] in the City of New York" is a venue provision or simply a forum selection clause. The Claimants assert that it is merely a forum selection clause while PaineWebber argues that they only agreed to arbitrate before the AAA in New York City, and no where else.

It is well-established that where an agreement is clear and unambiguous on its face, and where the language in question admits of only one reasonable interpretation, we need not and, indeed should not,

look to extrinsic evidence of the parties intent or to rules of construction to ascertain the agreement's meaning. *E.g., American Home Prods. Corp. v. Liberty Mutual Insurance Co. of North America,* 748 F.2d 760, 765 (2d Cir.1984); *Libra Bank, Ltd. v. Banco Nacional de Costa Rica, S.A.,* 570 F.Supp. 870, 866 (S.D.N.Y. 1983). We conclude that the provision of the AMEX constitution pursuant to which a member of the AMEX agrees to allow customers to elect arbitration "before the [AAA] in the City of New York" is clear and unequivocal: "in the City of New York" specifically states the venue of such arbitration proceedings. There is no other reasonable way that this term could be construed without being superfluous. The Claimants argument that this phrase is merely intended to state the AAA's headquarters is, thus, unpersuasive and unavailing. Likewise, the cases cited by the Claimants in their memoranda are inapposite as they concern arbitration clauses where the AAA is mentioned without reference to a geographic location. While it is true that a venue other than New York City might be more desirable for the Claimants, "[c]ustomer preference and convenience may be impinged upon in order to ensure the enforceability of agreements to arbitrate." *Roney,* 875 F.2d at 1223.

## III. CONCLUSION

In accordance with the foregoing, PaineWebber's motions are granted. Those claimants who have customer agreements with an arbitration clause specifying that arbitration take place according to the rules of the NASD, NYSE or AMEX, specifically Claimants Pitchford, Buechot, English, Rutherford, Slack, and Mr. and Mrs. Bishop, are hereby directed to select one of those three forums within 20 days of the date of this order or otherwise forfeit

---

5. The same is true for PaineWebber's memorandum submitted in the Beuchot action. That memorandum also concentrates on those with customer agreements providing for arbitration and really provides no legal analysis on the issue of those without arbitration clauses.

6. This is certainly not to say that a claimant must arbitrate before the AAA only; he or she could elect to submit the dispute to the AMEX or even to a different SRO pursuant to that

SRO's constitution and rules. *See, e.g., Paine, Webber, Jackson & Curtis, Inc. v. Chase Manhattan Bank, N.A.,* 728 F.2d 577, 579–80 (2d Cir. 1984) (NYSE constitution provided arbitration agreement between the parties); *Scobee Combs Funeral Home, Inc. v. E.F. Hutton & Co., Inc.,* 711 F.Supp. 605, 607 (S.D.Fla.1989) (where no arbitration agreement between the parties, brokerage firm compelled to arbitrate pursuant to the rules of the NASD).

the right to elect a forum. Any arbitration proceedings commenced by any of these claimants with the AAA are hereby stayed. Furthermore, the Bishop Claimants' motion for sanctions pursuant to Rule 11 is denied based upon their thoroughly inadequate papers submitted.

Those Claimants without arbitration clauses, to wit, J & F Supermarkets Inc. Profit Sharing Plan, Neidermeyer, Skambis, Conway, Key Trust, and Mr. and Mrs. Vedrody, may continue to proceed at the AAA, but the venue for such arbitration proceedings is New York City. Thus, to the extent that such proceedings have been commenced with an office of the AAA other than that in New York City, these Claimants are directed to have them transferred to New York.

Finally, with respect to Claimants Kinder, Rickman and Mr. and Mrs. Warren, for whom no determination can be made at this time, counsel for these Claimants are directed to supplement, by affidavit, the existing record within 20 days of this order, and any opposition thereto filed 10 days thereafter, such that a determination can be rendered by the Court and all three lawsuits put on the Court's suspense calendar. No extensions of these deadlines will be permitted, and no supplemental submissions after these deadlines will be accepted.

SO ORDERED.