## JOSEPH v PRUDENTIAL BACHE SECURITIES, INC. et al.

### Case No. CI90-7284

Ninth Judicial Circuit, Orange County

May 1, 1991

### APPEARANCES OF COUNSEL

**Robert Dyer, Esquire,** Duckworth, Allen, Dyer, & Doppelt, P.A., for plaintiff.

**John D. Boykin, Esquire,** for defendants.

### OPINION OF THE COURT

ROM W. POWELL, Circuit Judge.

*FINAL JUDGMENT ORDERING ARBITRATION BEFORE THE AMERICAN ARBITRATION ASSOCIATION*

This case presents the Court with the "AMEX Window" issue.

Plaintiff's Complaint for Declaratory Judgment is the equivalent of a petition to compel arbitration, and the Court has jurisdiction under § 86.011, Fla. Stat. and 9 U.S.C. § 4.

Patricia Joseph, an Orlando resident, maintained a securities account at the Altamonte Springs office of Prudential Bache Securities, Inc. Defendant, Sammy Hartman, acted as her account executive. Mrs. Joseph desires to "pursue an action for violations of the federal and Florida securities laws, together with pendent state law claims under the common law of Florida, in connection with recommendations of unsuitable securities. . ." (Complaint for Declaratory Judgment, paragraph 6.)

The joint account customer agreement signed by Plaintiff when she opened her account in March 1987 does not on its face provide for arbitration before the American Arbitration Association ("AAA"), the forum where Plaintiff filed her demand for arbitration. The Court heard counsel April 22, 1991 and considered additional materials filed at the time. The Court holds that Plaintiff properly elected the AAA via the AMEX Window and that the situs of the arbitration hearing shall be determined by the AAA.

### The Route to the AMEX Window

Plaintiff's customer agreement provides in relevant part that

"Any controversy arising out of or relating to my account. . .shall be settled by arbitration in accordance with the rules then obtaining of either the NASD, AMEX [American Stock Exchange] or . . . the New York Stock Exchange as I may elect." (Exhibit A to Complaint.)

Article VIII of the Amex Constitution deals with "Arbitration Procedure." Section 1 of this Article requires arbitration in accordance with contracts between the parties, "or in the absence of a written contract, if the customer chooses to arbitrate." Since Mrs. Joseph has an arbitration agreement her right to arbitrate before the AAA is governed by § 2, "Arbitration Forum," now known as the AMEX Window:

"§ 2. Arbitration shall be conducted under the arbitration procedures of this Exchange, except as follows:

\* \* \*

"(c) if any of the parties to a controversy is a customer, the customer may elect to arbitrate before the American Arbitration Association in the City of New York, unless the customer has

**153**

expressly agreed, in writing, to submit only to the arbitration procedure *of the Exchange."* (Emphasis added.)

Plaintiff correctly maintains that the language of her contract—"in accordance with the rules . . . [of the] Amex"—enables her to invoke Article VIII Section 2(c). It seems self-evident to the Court that the "rules" of the Amex include the arbitration procedure of its own constitution. Any doubt is resolved by Article I, § 3 of that same constitution:

"Rules of the Exchange

"(a) The term 'rules of the Exchange' shall include the Constitution and all rules adopted pursuant thereto." However, Article VIII § 2(c) does not by its terms require any specific language in the arbitration agreement. Assuming the brokerage firm is a member of the Amex, a customer can elect AAA if the agreement gives that customer a choice of *two or more* arbitration forums. In short, the AMEX Window is open unless the agreement limits arbitration to, and only to, the Amex, itself. There is nothing ambiguous or esoteric about the wording of Article VIII § 2(c); it certainly does not require talismanic language in the arbitration agreement. By its own terms, the Amex Constitution closes the Window only in the single circumstance where the customer has agreed "to submit only to the arbitration procedure of *the Exchange."* Article VIII § 2(c) (Emphasis added.) This single limitation does not affect Plaintiff because Defendant's agreement gives Mrs. Joseph *three choices* of forums: NASD, AMEX, and NYSE. As used in Article VIII § 2(a), the word "Exchange" can only be read as referring to the American Stock Exchange. This is borne out by Article I, §§ 1 and 2(c). These sections, when read together, leave little doubt that the drafters clearly intended there to be a distinction between "Exchange" and "exchange':

"§ 1. ****The title of this Corporation shall be 'American Stock Exchange, Inc.' hereinafter referred to as the 'exchange.' "*****

\* \* \*

"Purposes

"§ 2. **** The purpose of the Exchange shall be:

"An exchange

"(c) to conduct and carry on the functions of an 'exchange' within the meaning of that term in the Securities Exchange Act of 1934 . . ."

154

Thus, the argument that the reference to "Exchange" in Article VIII § 2(c) means 'any exchange' and therefore includes NASD and NYSE simply is not borne out by the carefully used language of Amex's own Constitution. Clearly, it would be inappropriate for the Court to adopt such a strained interpretation of the word "Exchange" when the sole purpose of such a construction is to foreclose customers of Amex member firms from electing a non-industry arbitration forum.

### The Hearing Situs

Defendants' contend that even if the AMEX Window is open to Mrs. Joseph, she must appear before the AAA—to quote the language of Article VIII § 2(c)—"in the City of New York." The Court does not read this language as a forum or venue selection clause, but rather as descriptive of the location of the AAA's main office. Moreover, both the AAA and Amex have determined that the words, "in the City of New York," are not a venue provision. Additionally, the Amex' position on procedural matters is

"that any questions regarding the administration of that matter, whether they pertain to venue or any other procedural or administrative matters, should be resolved according to the rules and procedures of that [other] organization.

"We, the Exchange, does not presume generally to say that any of its rules or provisions should supersede or impact or otherwise govern conduct of a proceeding before another organization." See pages 11-12 of August 17, 1988 deposition of Scott Noah, Amex Director of Arbitration, filed with the Court at the April 22, 1991 hearing."

The AAA addressed the AMEX Window in its May 1988 Supplement #7, Commercial Manual, which sets out the AAA's internal guidelines for determining venue of hearings:[1]

"The arbitration clause quoted in the proceeding section provides for administration by the AAA in the *City of New York.* This is interpreted to be merely descriptive of the location of the AAA's headquarters. Therefore, we will not automatically designate New York City as the locale for these cases. Rather, we will make locale determinations on a case-by-case basis, examining the traditional factors as set forth in the Commercial Manual."

"As a general matter of policy, the location of the customer should

---

[1] This Supplement #7 material was also filed with the Court at the April 22, 1991 hearing.

be a major factor, especially if the brokerage house had an office in the customer's city and transacted business with the customer through that office."

In light of the present strong judicial policy favoring arbitration, procedural questions, such as where the hearing is to be held, should be decided by the appropriate arbitration organization. Certainly a court should be hesitant in telling that organization where it should lay venue, since by its very nature venue requires a case-by-case determination. Although not relying on decisions from other jurisdictions in this case of first impression, the Court notes that deference to the arbitral authority on procedural matters is the rule, not the exception. For example, in *Boudreau v L.F. Rothschild & Co., Inc.,* 1990 WL 81861 (M.D. Fla. Feb. 23, 1990), there was no arbitration agreement and the only issue was whether the local plaintiff, who invoked the AMEX Window, had to go to New York City to arbitrate his claim. The Court held that venue was to be decided by the arbitrator:

"Once it is determined that the parties are obligated to submit the subject matter of a dispute to arbitration—as has been done in this case—"procedural" questions which grow out of the dispute and 'bear on its final disposition should be left to the arbitrator.' *John Wiley & Sons, Inc.,* 376 U.S. 543, 557; 84 S.Ct. 909, 918 (1964)." *Id.* at 4. To the same effect is the more recent AMEX Window decision in *Bear, Stearns & Co. v Bennett,* CCH Fed.Sec.L.Rep. paragraphs 95,857 (S.D.N.Y. Feb. 16, 1991). After quoting from the *John Wiley* case, *supra,* the Court said,

"Where the AAA holds its hearings is a procedural question to be left to the AAA. Even if this Court did order Bennett 'to submit [his] claim to the AAA. . .in New York City,' *Rutherford, supra,* at 109, it would then be the province of the AAA in New York City to determine in accordance with AAA rules where further AAA proceedings, which are beyond the control of this Court, should take place. . .9 U.S.C. § 4 does not deprive the AAA of the power to determine procedural questions related solely to its own hearings, in accordance with its own rules, such as where its hearings should be held. Such a reading would undermine the fundamental purpose of arbitration." At 99,222. (Citation omitted.) This approach certainly accords with common sense, for the alternative—arbitration in New York City only—would effectively close the AMEX Window to all customers in the rest of the continental USA, Hawaii and Alaska.

Deference to the AAA on the procedural question of laying venue is also required even if the language of Article VIII § 2(c) is construed as

156

a forum/venue selection clause. As the Court noted in *Bennett,* such clauses are not fixed in stone:

"Forum selection clauses, although of weight, do not deprive the courts of the power to transfer cases to other districts where the action could have been brought originally . . . [Citation omitted.] Here the undisputed facts would permit a transfer to the United States District Court in Florida. Secondly, to grant the petition as requested and issue an order that arbitration shall take place in New York solely on the basis of a forum selection clause in the

AMEX window would usurp the role of the arbitral proceedings agreed to by the terms of the Customer Agreement entered into by the parties."

Defendants rely on *PaineWebber, Inc. v Rutherford,* 903 F.2d 106 (2d Cir. 1990), where the AMEX Window issue involved an arbitration clause virtually identical to the one in the case at bar, in that it used the language, "in accordance with the rules . . . [of the] American Stock Exchange," and gave the customer the choice of five Self Regulatory Organizations (SROs). Without reference to the distinction in Article I between "Exchange" and "exchange" the Second Circuit said

". . . [W]e agree with the district court that that language [i.e., the word 'Exchange' in Article VIII § 2(c)] should be construed simply as an agreement to arbitrate before one of the SROs rather than the AAA. 721 F.Supp. at 549. To hold, as Rutherford apparently contends, that the quoted language incorporates the AMEX Window rather than superseding it, would allow customers to circumvent their agreements with ease." *Id.* at 108. The Court later recognized that its holding "also conflicts with the views of AMEX and the AAA," noting that the views of these "organizations would permit arbitration nationally, absent a contractual provision to the contrary." *Id.* at 109.

In short, the view expressed in *Rutherford* is not persuasive on this issue because the Court makes no effort to deal with the very specific language of either the phrase, "in accordance with the rules of the Amex," in the arbitration agreement or the word "Exchange" in Article VIII § 2(c). This language can best be understood (and rendered unambiguous) by a straight-forward reading of Article I. *Accord, Bennett* at 99,221. See, also, *Cowen & Co. v Anderson,* 76 N.Y.2d 318, 559 N.Y.S.2d 225, 558 N.E.2d 27, 28-29 (1990) (granting the AMEX Window remedy). Since *Cowen & Co.* arose in New York City, venue was not an issue. However, the right to arbitrate before the AAA pursuant to the AMEX Window involved customer agreement lan-

157

guage virtually identical to that signed by Mrs. Joseph in the case at bar.

Although this Court is not bound by any of the above-mentioned decisions, it does note that its reading of the Amex Constitution and Mrs. Joseph's arbitration agreement is in full accord with the contract construction adopted in *Cowen* and *Bennett, supra. Rutherford,* of course, goes the other way. So, too, does *Merrill Lynch, Pierce, Fenner & Smith, Inc. v Georgiadis,* 903 F.2d 109 (2d Cir. 1990) (decided the same day and by the same panel that decided *Rutherford).* There the language of the customer's option agreement required " 'arbitration *only before' "* the NASD, the NYSE " 'or an Exchange . . . upon which listed options transactions are executed.' " *Id.* at 111 (Emphasis in original.) While options contracts may be bought and sold on the Amex, inclusion of the Amex in the arbitration agreement is not made a prerequisite by Article VIII. As stated above, there are only two announced conditions to a customer electing AAA: 1) that the brokerage firm be a member of the American Stock Exchange, and 2) that the customer "has [not] expressly agreed, in writing, to submit only to the arbitration procedure of the [American Stock] Exchange. This is the plain meaning of Article VIII §§ 1 and 2(c).

When the customer agreement in the case at bar—or that in *Rutherford* or *Georgiadis*—is read in conjunction with Articles I and VIII, no ambiguity is presented, and certainly not one which calls for a court to hold—as in *Georgiadis*—"that the arbitration provision of the AMEX Constitution may be superseded by a more specific customer agreement of the parties," *id.* at 112, a proposition which, itself, is far from self-evident. Here as in *Cowen,*—where the Court declined to follow earlier federal AMEX Window decisions to the contrary—"We prefer to rest our decision upon settled rules of contract law and read the language [of Articles I and VIII of the arbitration agreement] according to its clear meaning." 558 NE 2d at 30.

\* \* \*

*To Summarize:*

1) Mrs. Joseph's arbitration agreement gives her the right to arbitrate before the AAA pursuant to the AMEX Window.

2) The phrase, "in the City of New York" is not fairly read as a forum/venue selection clause in light of the respective internal positions of the Amex and the AAA; a contrary reading would render this avenue to a non-industry forum of little practical benefit for most securities claimants.

3) If, however, "in the City of New York" is viewed as a forum/

158

venue selection clause, the AAA has full authority under its internal guidelines to decide whether venue in AMEX Window arbitrations should be fixed in New York City or a more convenient, practical location.

Accordingly, it is

ORDERED and ADJUDGED that,

1. The rights of Plaintiff Patricia Joseph are declared as above and she is entitled to elect the AAA, and Defendants, Prudential Bache Securities, Inc. and Sammy Hartman, are hereby ordered to arbitrate before the AAA in the City of Orlando, if that be the venue determined by that organization.

2. Costs of this proceeding shall be awarded Plaintiff upon presentation of a Cost Bill.

3. This action shall be stayed as to all further proceedings until such time as this arbitration is completed and one or more parties moves this Court to confirm, modify or vacate the award pursuant to 9 U.S.C. §§ 9-10.

DONE and ORDERED in Chambers at Orlando, Florida this 1st day of May, 1991.