**PAINEWEBBER, INC., Appellee,**

v.

**Pat RUTHERFORD, Charles Vedrody and Mary Vedrody, Appellants.**

**No. 1111, Docket 89–9035.**

United States Court of Appeals, Second Circuit.

Argued April 16, 1990.

Decided May 7, 1990.

Robert Dyer, Orlando, Fla. (Neal J. Blaher, and Duckworth, Allen, Dyer & Doppelt, Orlando, Fla., on the brief), for appellants, Pat Rutherford, Charles Vedrody and Mary Vedrody.

Sarah G. Anderson, New York City, for appellee, PaineWebber, Inc.

Before TIMBERS, MESKILL and CARDAMONE, Circuit Judges.

TIMBERS, Circuit Judge:

Appellants appeal from a summary judgment entered September 14, 1989, in the Southern District of New York, Kenneth Conboy, *District Judge,* granting separate motions to compel arbitration. *PaineWebber, Inc. v. Pitchford,* 721 F.Supp. 542 (S.D.N.Y.1989).

Appellant Pat Rutherford appeals from that part of the order which denied her cross-motion to compel arbitration of her claim against appellee PaineWebber, Inc. before the American Arbitration Association ("AAA"). The district court reached its decision by giving effect to a clause in Rutherford's agreement with PaineWebber that required that any dispute between the parties be arbitrated before one of several fora provided by the securities industry. On appeal, Rutherford renews her claim that the agreement is superseded by a provision in the Constitution of the American Stock Exchange ("AMEX") which, she alleges, permits her to choose the AAA as a forum despite the agreement. For convenience, we will refer to this branch of the appeal as the "Rutherford claim."

Appellants Charles and Mary Vedrody stand in a different position. There is no dispute that their claim against PaineWebber may be arbitrated before the AAA. They appeal from that part of the court's order which requires their claim before the AAA to be arbitrated in the City of New York. The court based its decision on the statement in the AMEX Constitution that claims may be brought "before the [AAA] in the City of New York." On appeal, the Vedrodys renew their claim that the geographic reference is not a venue provision, but rather merely descriptive. We will refer to this branch of the appeal as the "Vedrody claim."

For the reasons that follow, we affirm the order of the district court in its entirety. We will not address in detail the legal questions presented by the Rutherford claim, since those questions are resolved fully by our decision today in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis,* 903 F.2d 109 (2 Cir.1990).

## I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

This appeal arises from claims by a large number of customers against appellee PaineWebber, Inc., alleging that employees of PaineWebber touted a certain stock in order to inflate its value, induced customers to buy shares, and then sold their own shares before the price collapsed. The merits of the case are not before us.

Appellants are part of a larger class of 21 claimants, represented by the same counsel, who have identical grievances against PaineWebber. For our purposes, the class can be divided into two categories. The first category, which included Rutherford, had signed pre-dispute agreements with PaineWebber. These agreements all contained provisions requiring any dispute to be settled by arbitration by the so-called self-regulatory organizations ("SROs") of the securities industry. Rutherford's agreement provided that:

"Any controversy between us arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the New York Stock Exchange, American Stock Exchange, National Association of Securities Dealers or where appropriate, Chicago Board Op-

tions Exchange or Commodity Futures Trading Commission, as I [Rutherford] may elect."

The other category, which included the Vedrodys, did not sign pre-dispute agreements with PaineWebber. Their right to arbitration was governed by the relevant provision of the AMEX Constitution, Art. VIII, § 2(c) (the so-called "AMEX Window"), which provides that:

"the customer may elect to arbitrate before the American Arbitration Association in the City of New York, unless the customer has expressly agreed, in writing, to submit only to the arbitration procedure of the Exchange."

On or about March 29, 1988, all of the claimants filed a joint complaint against PaineWebber. The complaint was filed in the AAA's Miami office, and included a demand for arbitration before the AAA in Orlando, Florida. PaineWebber responded by commencing a special proceeding in the New York Supreme Court, New York County, on May 27, 1988, which sought to block the requested arbitration. Appellants and the other claimants removed the action to the Southern District of New York soon thereafter.

The parties filed motions for summary judgment. In an opinion and order entered September 14, 1989, the court granted summary judgment in favor of PaineWebber on separate grounds, viz. that Rutherford and the others similarly situated could not submit their claim to the AAA, and that the Vedrodys and others similarly situated had to submit their claim to the AAA in New York City, or not at all. 721 F.Supp. 542 (S.D.N.Y.1989).

This appeal followed.

## II.

We turn first to the issue presented by the Rutherford claim: whether an agreement between a broker and a customer to arbitrate disputes only in an SRO may supersede the terms of a stock exchange constitution in general and the AMEX Window

in particular. As stated above, our holding that such agreements should be given effect is based on our decision in *Merrill Lynch v. Georgiadis, supra*, 903 F.2d 109.

■ There is one potentially significant distinction between the two cases. In *Merrill Lynch*, the customer agreed to arbitrate "only before" the New York Stock Exchange, the National Association of Securities Dealers or other unnamed SROs. *Id.* at 111. By contrast, the Rutherford agreement provides that arbitration be "in accordance with the rules" of one of the SROs.

Although Rutherford does not press the point vigorously on appeal, we agree with the district court that that language should be construed simply as an agreement to arbitrate before one of the SROs rather than the AAA. 721 F.Supp. at 549. To hold, as Rutherford apparently contends, that the quoted language incorporates the AMEX Window rather than superseding it, would allow customers to circumvent their agreements with ease. *Id.*

■ That leaves for decision the question whether "a specific customer agreement can supersede the AMEX Constitution regarding the choice of arbitration fora." *Merrill Lynch, supra*, 903 F.2d at 111. For the reasons set forth in section II of the *Merrill Lynch* opinion, we hold that it can. We therefore affirm the order of the district court in this respect.

## III.

■ This brings us to the Vedrody claim—whether the phrase in the AMEX Window "before the American Arbitration Association in the City of New York" compels the Vedrodys, if they elect AAA arbitration, to arbitrate in New York City.

The Vedrodys contend that the phrase "in the City of New York" is merely a reference to the headquarters of the AAA, rather than a forum selection clause. We disagree. We of course are guided by the principle that extrinsic evidence may not be resorted to for the purpose of altering con-

tractual terms that, standing alone, are unambiguous. *E.g., Wards Co. v. Stamford Ridgeway Assocs.,* 761 F.2d 117, 120 (2 Cir.1985).

The argument that "in the City of New York" is descriptive is undermined by the fact that, at all relevant times, there was only one American Arbitration Association. The geographic reference is superfluous if not a forum selection clause. *PaineWebber, supra,* 721 F.Supp. at 551. In essence, the Vedrodys invite us to read *"in* the City of New York" as *"of* the City of New York" (emphasis added). Since we must give effect to the agreement by its terms, if possible, we decline their invitation.

To the extent that our decision conflicts with the one opinion that has addressed this precise issue, *Boudreau v. L.F. Rothschild & Co.,* No. 89-250-CIV-ORL-18 (M.D.Fla.1990), we decline to follow it. We are aware that our holding also conflicts with the views of AMEX and the AAA. Both organizations would permit arbitration nationally, absent a contractual provision to the contrary. We cannot alter the unambiguous terms of the AMEX Window simply because the alternative construction may be thought to be fairer to the Vedrodys. *E.g., United States v. 0.35 of an Acre of Land,* 706 F.Supp. 1064, 1070 (S.D.N.Y. 1988) (citing *Collard v. Incorporated Village of Flower Hill,* 52 N.Y.2d 594, 604, 439 N.Y.S.2d 326, 331, 421 N.E.2d 818, 823 (1981)). If AMEX finds that our construction is unacceptable, it of course is free to change the terms of future agreements. *Cf. Roney & Co. v. Goren,* 875 F.2d 1218, 1221 (6 Cir.1989).

### IV.

To summarize:

We hold that, based on her agreement with PaineWebber, Rutherford must submit her claim to one of the SRO fora provided for in the agreement or lose her right to arbitrate. We further hold that the phrase in the AMEX Window "in the City of New York" is a forum selection clause. If the Vedrodys exercise their right to submit their claim to the AAA, they must do so in New York City, or not at all.

Affirmed.