OPINION OF THE COURT
Simons, J.
Petitioner Cowen & Company is a member of the American Stock Exchange (Amex) and petitioner Christopher Stark is one of its registered representatives. They seek to stay arbitration before the American Arbitration Association (AAA) of a dispute with one of their customers, respondent Jeffrey Anderson. The courts below denied the stay. The issue presented is whether the agreements entered into between petitioners and respondent permit respondent to arbitrate his claims before the AAA or limit him to arbitration before various securities industry self-regulatory organizations, i.e., the New York Stock Exchange, the American Stock Exchange or the National Association of Securities Dealers. We conclude that the agreements permit arbitration before the AAA and therefore affirm the order of the Appellate Division.
In July 1986 respondent opened securities accounts with petitioners. When he did so, he signed an "Option Agreement”[1] and "Margin Agreement”,[2] both in standard form, which contained clauses providing that disputes between the parties should be settled by arbitration in "accordance with the rules, then in effect” of the New York Stock Exchange, American Stock Exchange or the National Association of *321 Securities Dealers. The agreements gave respondent the option to elect the forum.
On December 29, 1988 respondent served a notice of intention to arbitrate claims arising out of the alleged mishandling of his accounts before the AAA. Petitioners applied for a stay contending that respondent could only elect arbitration before the New York Stock Exchange, the American Stock Exchange or the National Association of Securities Dealers. Respondent maintained in opposition that arbitration before AAA was proper because the "rules of the Amex”, referred to in the option and margin agreements, included the "Amex Window” (Amex const, art VIII, § 2 [c]) which authorized him to do so.[3]
The Supreme Court denied the stay, holding that the rules of the American Stock Exchange include a right on the part of respondent to " 'elect to arbitrate before the American Arbitration Association * * * unless the customer has expressly agreed, in writing, to submit only to the arbitration procedure of the Exchange’ ” (quoting Amex const, art VIII, § 2 [c]). The court concluded respondent had not limited himself to arbitration before the Amex in the agreements and, therefore, that the exception precluding arbitration before the AAA did not apply. The Appellate Division affirmed and we granted leave to appeal.
Arbitration agreements are contracts and their meaning is to be determined from the language employed, by the parties under accepted rules of contract law (Matter of American Ins. Co. [Messinger — Aetna Cas. & Sur. Co.], 43 NY2d 184, 193-194; Stanley & Son v Trustees of Hackley School, 42 NY2d 436, 438-440; cf., Sablosky v Gordon Co., 73 NY2d 133, 137). The option and margin agreements before the court authorize respondent to elect arbitration "in accordance with the rules * * * [of the] American Stock Exchange.” The Amex constitution, in turn, defines the term "rules of the Exchange” to "include the Constitution and all rules adopted pursuant thereto” (Amex const, art I, § 3 [a] [emphasis added]). The "Arbitration Procedure” of the Amex, outlined in its constitution, states that "the customer may elect to arbitrate before the American *322 Arbitration Association * * * unless the customer has expressly agreed * * * to submit only to the arbitration procedure of the Exchange” (Amex const, art VIII, § 2 [c]). Inasmuch as respondent did not agree to limit the arbitration to the self-regulating organizations, the plain language of the stock and margin agreements grant him the right under the Amex constitution to elect to arbitrate the dispute before the AAA.
Petitioners rely on several Federal cases to support their contention that the option and margin agreements were intended to and did override the provision of the Amex constitution and limit arbitration to one of the three specifically named self-regulatory bodies. However, the contract language in three of those cases is significantly different from the language petitioners used. Thus, in Merrill Lynch, Pierce, Fenner & Smith v Georgiadis (903 F2d 109, 110 [2d Cir]), the customer signed a "Standard Options Agreement” which stated, " '[a]ny controversy between us * * * shall be settled by arbitration only before the National Association of Securities Dealers, Incorporated, or the New York Stock Exchange, or an Exchange located in the United States upon which listed options transactions are executed’ ” (emphasis added). When the customer attempted to invoke the "Amex Window” by filing a demand for arbitration with the AAA, the Court of Appeals construed the language of the agreement strictly and limited arbitration to one of several designated fora. Although the "Amex Window” allowed the customer to arbitrate before the AAA, the parties had agreed otherwise and their agreement was held controlling.
Similarly, in Piltch v Merrill Lynch, Pierce, Fenner & Smith (714 F Supp 537 [D DC]), the customers signed a standard option agreement providing in part that " '[a]ny controversy * * * arising out of such option transactions or this agreement shall be settled by arbitration before the National Association of Securities Dealers, Incorporated, or the New York Stock Exchange, or the American Stock Exchange, only. ’ ” (714 F Supp, at 537 [emphasis added].) The court held that because they had agreed to settle all disputes before the three self-regulatory organizations listed in the options agreement, they were not entitled to use the "Amex Window” to elect the AAA forum (see also, PaineWebber Inc. v Pitchford, 721 F Supp 542, 543 [SD NY], affd sub nom. PaineWebber, Inc. *323 v Rutherford, 903 F2d 106 [no arbitration before AAA where customer agreement stated " Xa)ny controversy between us * * * shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the New York Stock Exchange, American Stock Exchange, National Association of Securities Dealers or where appropriate, Chicago Board Option Exchange or Commodities Futures Trading Commission’ ” (emphasis added)]).
These cases, rather than supporting petitioners’ argument, illustrate that they could easily have limited the forum for arbitration to one of the three named organizations by so stating in the option and margin agreements had they chosen to do so. Unlike the clauses in the agreements in the cases cited above, however, petitioners’ agreements do not expressly state that respondent is bound to arbitrate their claim "only before” the three self-regulatory organizations or that the customer must submit to arbitration in accordance with the procedures of a particular entity. They state instead arbitration shall be "in accordance with the rules” of the New York Stock Exchange, the American Stock Exchange or the National Association of Securities Dealers. The term "rules” is not defined or limited by the agreements and respondent is, therefore, entitled to rely on the provision in the Amex constitution.
Petitioners have cited some Federal District Court cases which refused to interpret the term "rules of the Amex” to encompass the Amex Window provision in the Amex constitution and construed customer agreements similar to those at issue here as foreclosing arbitration before the AAA (see, Hybert v Shearson Lehman/American Express, 1989 WL 64450 [US Dist Ct, ND Ill, June 8, 1989]; Bear Steams & Co. v Karol & Assocs., 728 F Supp 499, 500, 503-504 [ND 111]; PaineWebber Inc. v Astrella, No. 89-2268 [US Dist Ct, NJ, Sept. 6, 1989]). We prefer to rest our decision upon settled rules of contract law and read the language according to its clear meaning. Indeed, even if the language of petitioners’ agreements could be considered ambiguous we would construe it most strongly against petitioners and favorably to respondent because petitioners drafted the agreements (Matter of PaineWebber, Inc. v Webb, 155 AD2d 938; see, Jacobson v Sassower, 66 NY2d 991, 993; 67 Wall St. Co. v Franklin Natl. Bank, 37 NY2d 245, 249).
*324 Accordingly, the order of the Appellate Division should be affirmed, with costs.
Judges Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur; Chief Judge Wachtler taking no part.
Order affirmed, with costs.

. "I agree that any controversy arising out of or relating to my account with you * * * shall be settled by arbitration in accordance with the rules then in effect of the New York Stock Exchange, the American Stock Exchange or the NASD as I may elect.”

. "Any controversy arising out of or relating to my accounts * * * shall be settled by arbitration in accordance with the rules, then in effect, of the NASD or the Board of Directors of the New York Stock Exchange, Inc. or the American Stock Exchange, Inc. as I may elect.”

. The section provides in part:
"Sec 2. Arbitration shall be conducted under the arbitration procedures of this Exchange, except as follows. * * *
"(c) if any of the parties to a controversy is a customer, the customer may elect to arbitrate before the American Arbitration Association in the City of New York, unless the customer has expressly agreed, in writing, to submit only to the arbitration procedure of the Exchange.”