**Charlie LUCKIE, Jr., et al., Plaintiffs,**

v.

**SMITH BARNEY, HARRIS UPHAM & CO., INC., Defendant.**

**Nos. 89–844–CIV–T–17(C), 91–331–CIV–T–17(A).**

United States District Court,
M.D. Florida,
Tampa Division.

June 7, 1991.

Robert Dyer, Duckworth, Allen, Dyer & Doppelt, Orlando, Fla., for plaintiffs.

David G. Hanlon and Jeanne T. Tate, Shackleford, Farrior, Stallings & Evans, Tampa, Fla., for defendant.

## ORDER ON MOTION

KOVACHEVICH, District Judge.

This cause comes before the Court on Plaintiffs' motion to compel arbitration pursuant to 9 U.S.C. § 4.

## I. BACKGROUND

This controversy arises out of Defendant's alleged mismanagement and misuse of a number of investment accounts resulting in losses for the Plaintiffs. On April 11, 1989, Plaintiffs filed a complaint with the American Arbitration Association (AAA) to resolve the dispute. The case was filed pursuant to Article VIII, §§ 1, 2(c) of the constitution of the American Stock Exchange (AMEX) which allows a "customer" of any member organization to demand arbitration before the AAA in the absence of conflicting written arrangements.

On May 9, 1989, Plaintiffs commenced this suit in the Sixth Circuit Court of the State of Florida seeking declaratory judgment affirming AAA's jurisdiction and

compelling arbitration before the AAA. That case was subsequently removed to this Court on its diversity jurisdiction.

The day before, however, the Defendant had filed suit in the Supreme Court of the State of New York, New York County attacking the jurisdiction of the AAA and seeking to compel arbitration before the New York Stock Exchange (NYSE), the National Association of Securities Dealers (NASD) or AMEX. On May 11, 1989, the New York court enjoined Plaintiffs "from proceeding in any manner" with their claim before the AAA. Plaintiffs immediately filed a motion challenging the jurisdiction of that court to hear the case. In an order dated August 11, 1989, this Court stayed further action in this case pending the New York court's resolution of the jurisdictional issue.

On August 31, 1989, the New York court issued an interim order affirming that court's jurisdiction. Plaintiffs, however, filed a renewed objection to the state court's jurisdiction on September 18, 1989. This Court chose not to lift the stay on further proceedings pending a final decision on the jurisdictional question. Unfortunately, the New York court has taken no further action since the filing of the September 18, 1989 motion. Given the New York court's failure to act, this Court will no longer stay these proceedings.

## II. DISCUSSION

Once the stay has been lifted the Court must rule on the following motions: 1) Defendant's motion to dismiss, abate or stay; and, 2) Plaintiffs' motion to compel arbitration.

Before the Court turns to these issues, it grants the Defendant's motion to consolidate the two cases before it concerning this controversy, *Luckie v. Smith Barney, Harris, Upham & Co.* (Case No. 89–844–CIV–T–17(C)) and *Luckie v. Smith Barney, Harris, Upham & Co.* (Case No. 91–331–CIV–T–17(A)), pursuant to Fed.R. Civ.P. 42(a) and Rule 1.04(b), Local Rules of the Middle District. All new filings in this case will be in the lowest numbered case.

### A. DEFENDANT'S MOTION TO DISMISS, ABATE OR STAY

■ In its first contention, Defendant asserts that this action should be dismissed as a matter of comity due to the prior filing and service in the New York case. In support of this position, it cites *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169 (11th Cir.1982) (citations omitted): [1]

> In absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case. It should make no difference whether the competing courts are both federal courts or a state and federal court with undisputed concurrent jurisdiction.

As Defendant demonstrates, both this Court and the New York court are fully competent to hear this case.

This overlooks, however, the strong presumption in favor of federal jurisdiction established in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) and *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). *Accord, American Bankers Ins. v. First State Ins.*, 891 F.2d 882 (11th Cir.1990).[2] These cases

**1.** Other cases cited by the Defendant are less persuasive. *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir.1982) ("this 'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but rather to be applied with a view to the dictates of sound judicial administration."); *Koch Engineering Co. v. Monsanto Co.*, 621 F.Supp. 1204, 1207 (E.D.Mo.1985) ("The first to file rule however is not one of absolutes.... the courts must consider each case individually in deciding questions of concurrent jurisdiction."); *The Horn and Hardart Co. v. Burger King Corp.*, 476 F.Supp. 1058, 1060

(S.D.N.Y.1979) (This case involved a concurrent jurisdiction dispute between two federal courts, not a federal and a state court as in this case. In addition, the order notes that the motion was made and decided hastily. Neither party had developed in arguments fully and the order was issued without prejudice.)

**2.** This case sets the standard for the application of the analysis developed in *Colorado River* and *Moses H. Cone* in the Eleventh Circuit.

clearly establish that the surrender of federal jurisdiction in favor of a state court proceeding "is the exception, not the rule." *Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244. In addition, they create a six factor balancing test to resolve jurisdictional issues "with the balance heavily weighted in favor of the exercise of [federal] jurisdiction." *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937.

Defendant maintains that an examination of the factors identified in *Colorado River* and *Moses H. Cone* provide adequate justification for granting its motion. Accordingly, the Court will review the relevant factors as directed in *American Bankers Ins.:* 1) whether one of the courts has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the potential for piecemeal litigation; 4) the order in which the forums obtained jurisdiction; 5) whether state or federal law will be applied; and, 6) the adequacy of the state court to protect the parties' rights. 891 F.2d at 884.

Defendant did not cite either of the first two factors in support of its motion and the Court must assume that they are not at issue. Concerning the third factor, Defendant suggested that this Court's assertion of jurisdiction would lead to "duplicative, inconsistent, piecemeal and wasteful litigation." Despite Defendant's bold statement, it does not identify any issue before the New York court which is not addressed in this filing. In fact, it characterizes the New York filing as "virtually identical" to the suit in this Court. Furthermore, an examination of the petition to the New York court commencing that proceeding reveals no issues outside those litigated in this case which might result in piecemeal litigation.

Defendant argues that the forth consideration also favors its position. It emphasizes that papers were filed and service was completed in the state court suit before the federal suit. The Supreme Court has warned against such a "mechanical" interpretation of this factor. *Moses H. Cone,* 460 U.S. at 21, 103 S.Ct. at 939–40. Instead, the key criterion is the progress that has been made in the respective suits. *Id.* As noted by Defendant, both suits have been fully briefed but neither has made significant progress. Furthermore, that failure of progress is largely the result of the New York court's failure to take prompt action. As the Supreme Court noted in *Moses H. Cone,* 460 U.S. at 22–23, 103 S.Ct. at 940–41, Congress intended that the courts expedite proceedings under the Arbitration Act, specifically 9 U.S.C. §§ 3, 4, to move disputes into arbitration as quickly as possible. In view of the clear intent of Congress, this Court will tolerate no more delay in the disposition of this case.

A second objection to Defendant's emphasis on the order of filing and the service of process is its policy implications. Plaintiffs had no reasonable opportunity to file first because they did not know that a dispute over arbitration would arise. An adoption of Defendant's position would encourage anticipatory litigation, making court proceedings a common prelude to arbitration.[3]

Finally, Defendant argues that New York state law controls the case making the state court more competent to decide the issue. This objection misconceives the nature of this suit. This suit does not involve the disposition of the original controversy; that is a question for the arbitrator. The question in this suit is the identity of the arbitrator and this question is controlled by federal law under the Arbitration Act, 9 U.S.C. §§ 1–15. Thus, ultimately this factor argues for rather than against this Court's assumption of jurisdiction.

Given this evidence, the Court finds no compelling reason to deviate from the "rule" of asserting federal jurisdiction as

**3.** This is analogous to a point made by the Supreme Court in *Moses H. Cone,* 460 U.S. at 21, 103 S.Ct. at 939–40, lifting a stay in federal court on litigation which had been filed subsequent to a state court suit. The court declined to apply the first to file rule strictly because the plaintiff in the later federal suit could not anticipate litigation resisting arbitration. Although this suit concerns the choice of arbitrators, rather than whether arbitration will occur at all, the point still applies.

expressed in *Colorado River* and *Moses H. Cone.*[4]  Therefore, the Court lifts its August 11, 1989 stay and now rules on the pending motions in the case.[5]

### B. PLAINTIFFS' MOTION TO COMPEL ARBITRATION

Plaintiffs move to compel arbitration before the AAA, overriding the stay of the New York court.  In support of their position, they assert that the constitution of the American Stock Exchange requires that Defendant submit to arbitration before the AAA to resolve this dispute.  Plaintiffs cite the AMEX constitution:

> Sec. 2.  Arbitration shall be conducted under the arbitration procedures of this Exchange, except as follows:
>
> \*    \*    \*    \*    \*    \*
>
> (c) if any of the parties to a controversy is a customer, the customer may elect to arbitrate before the American Arbitration Association in the City of New York, unless the customer has expressly agreed, in writing, to submit only to the arbitration procedure of the Exchange.

AMEX Constitution, Art. VIII, § 2.  Plaintiffs refer to this provision as the "AMEX window."  Plaintiffs maintain that they have elected to conduct arbitration before the AAA and that the Defendant, as a member of AMEX, is bound to abide by the terms of the AMEX constitution.

In response, Defendant claims that Plaintiffs have agreed, in writing, to arbitrate any dispute with the Defendant before NASD, NYSE or AMEX.  This agreement, according to the defendant, would supersede the AMEX window and bar arbitration before the AAA.  It finds this agreement in its standard "Securities Account Agreement," signed by Plaintiffs at the time that the account was opened:

> 11.  The undersigned agrees that all controversies between the undersigned and Smith Barney and/or any of its officers, directors or employees concerning or arising from (i) any account maintained with Smith Barney by the undersigned; (ii) any transaction involving Smith Barney and the undersigned, whether or not such transaction occurred in such account or accounts; ... shall be determined by arbitration before the National Association of Securities Dealers, Inc., the New York Stock Exchange, the American Stock Exchange, or any recognized arbitration facility provided by any exchange and in accordance with the rules of such body then obtaining....

Similar language appears in Defendant's standard "Option Account Agreement," also signed by Plaintiffs:

> 4.  ... Any controversy arising out of or relating to my account, to transactions with you for me or to this Agreement or the breach thereof shall be settled by arbitration in accordance with the rules, regulations and procedures then in effect of the New York Stock Exchange, Inc., the AMEX or the National Association of Securities Dealers, Inc., as I may elect....

Thus, the Court must decide whether these clauses preempt the AMEX window.

In *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225–226, 107 S.Ct. 2332, 2336–37, 96 L.Ed.2d 185 (1987), the Supreme Court noted that the Arbitration Act reverses the common law hostility to arbitration agreements, allowing them to be enforced as normal contracts.  It noted that the Arbitration Act established a federal policy supporting arbitration which obligates the courts to enforce arbitration agreements rigorously.  *McMahon,* 482 U.S. at 226, 107 S.Ct. at 2337.  Thus, arbitration agreements are fully enforceable "[a]bsent a well-founded claim that an arbitration agreement resulted from the sort of fraud or excessive economic power that

---

**4.** The Defendant makes one additional objection to this Court's assumption of jurisdiction.  It cites an *ex parte* motion of the New York court which enjoins the Plaintiff from attempting to secure arbitration before the AAA in any manner.  It is clear, however, that state courts lack the power to restrain federal court proceedings.

*General Atomic Co. v. Felter,* 434 U.S. 12, 98 S.Ct. 76, 54 L.Ed.2d 199 (1977); *Donovan v. Dallas,* 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964).

**5.** The Court will return to Defendant's motion to dismiss below.

'would provide grounds for the revocation of any contract.'" *McMahon*, 482 U.S. at 226, 107 S.Ct. at 2337 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)).

Plaintiffs advance two arguments to prevent the contractual preemption of the AMEX window. First, Plaintiffs argue for a strict construction of the language of the AMEX window, *supra*, which provides for AAA arbitration at the customer's choice "unless the customer has expressly agreed, in writing, to submit only to the arbitration procedure of the Exchange." AMEX Constitution, Art. VIII, § 2. Plaintiffs contend that this language bars enforcement of the parties' agreement because it provides for arbitration outside of AMEX or AAA. Plaintiffs find, however, little support for their strained and unnatural understanding of the AMEX window. The only case cited by Plaintiffs which fully supports their position [6] is *Cowan & Co. v. Anderson*, Index No. 1708 (N.Y.S.1989), a four-sentence, unpublished New York state case. Defendant finds much superior support for the more intuitive conclusion that the AMEX window operates as a default provision in the absence of a specific agreement between the parties. *Roney & Co. v. Goren*, 875 F.2d 1218 (6th Cir.1989); *Thompson McKinnon Securities, Inc. v. Salter*, Slip Op. 88–2035 (S.D.Fla., 1988). This Court finds no compelling reason to adopt the Plaintiffs' position.

Second, Plaintiffs contend that AAA arbitration is better suited to protect their rights. Plaintiffs do not contend, however, that the forums listed in the account agreements are inadequate. As Plaintiffs point out themselves, the forums established under the NYSE, AMEX and NASD are subject to SEC regulation to protect the rights of the customers of member firms. In light of the undisputed competence of these forums, this Court will not allow Plaintiffs to circumvent the clear import of their agreement with the Defendant. As explained by the Sixth Circuit:

> When Congress enacted the Arbitration Act making arbitration agreements enforceable, it surely did not intend that the parties be able to disregard selected contractual obligations willy-nilly in order to choose an arbitral forum more convenient or more suited to a party's particular needs.

*Roney & Co. v. Goren*, 875 F.2d 1218, 1223 (6th Cir.1989).

The Court holds that Plaintiffs have not established "a well-founded claim" sufficient under the Supreme Court's decision in *McMahon* to defeat the contractual agreements of the parties. Therefore, the Court denies Plaintiffs' motion to compel arbitration.

### DISMISSAL OF COMPLAINT

Defendant, in its motion to dismiss, abate or stay, argues for the dismissal of the case on the grounds that "as a matter of law" the Plaintiffs "are not entitled to arbitrate their dispute with Smith Barney under the AAA." Although this motion, filed on June 5, 1989 and stayed since August 11, 1989, was originally intended to prevent a substantive determination of the issues, this Court will grant it in light of the preceding discussion. Accordingly, it is

ORDERED that this Court's August 11, 1989 stay on proceedings in this case be lifted; that Plaintiffs' pending motion to compel arbitration be denied; that Defendant's pending motion to dismiss be granted; and the Clerk of the Court shall enter judgment for Defendant in both cases.

DONE and ORDERED.

---

6. Plaintiffs cite a variety of other cases supporting their proposition that the AMEX window can be enforced against AMEX members in the absence of differing terms in the contract. *Paine Webber, Jackson & Curtis, Inc. v. Chase Manhattan Bank, N.A.*, 728 F.2d 577 (2d Cir. 1984); *Axelrod & Co. v. Kordich, Victor & Neufeld*, 451 F.2d 838 (2d Cir.1971); *Boudreau v. L.F. Rothschild & Co.*, 1990 WL 81861, Slip Op. 89–250–CIV–ORL–18 (M.D.Fla.1990). In the present case, however, there are differing terms in the contract and these cases do not apply.