999 F.2d 509
 62 USLW 2168, Fed. Sec. L. Rep. P 97,723
 Charlie LUCKIE, Jr., Barbara C. Luckie, Henry C.
Satterfield, III; John S. Mooshie; Jere A.
Hughes and Doris Kahn, Plaintiffs-Appellants,
v.
SMITH BARNEY, HARRIS UPHAM & CO., INC., Defendant-Appellee.
 No. 91-4131.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 26, 1993.
 
 Robert Dyer, Duckworth, Allen, Dyer & Doppelt, Neal J. Blaher, Orlando, FL, for plaintiffs-appellants.
 Jeanne T. Tate, Hill, Ward & Henderson, Tampa, FL, for defendant-appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before COX, Circuit Judge, JOHNSON, Senior Circuit Judge, and ATKINS*, Senior District Judge.
 PER CURIAM:
 
 
 1
 Appellants Charlie and Barbara Luckie, Henry Satterfield, John Mooshie, Jere Hughes and Doris Kahn filed a motion in district court to compel arbitration of their disputes with Smith Barney, Harris Upham & Co. (Smith Barney) before the American Arbitration Association (AAA). In various securities account agreements, appellants individually had agreed with Smith Barney to submit disputes to arbitration either "in accordance with the rules of" or "before" the New York Stock Exchange (NYSE), the American Stock Exchange (AMEX) or the National Association of Securities Dealers (NASD). Appellants argued that these agreements did not limit their ability to elect AAA arbitration under provisions of the AMEX Constitution. The district court held that the arbitration agreements did not permit appellants to compel Smith Barney to submit to arbitration before the AAA. Accordingly, the district court denied appellants' motion to compel arbitration and dismissed appellants' related action for declaratory judgment. See Luckie v. Smith Barney, Harris Upham & Co., 766 F.Supp. 1116 (M.D.Fla.1991). We affirm.
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 In March and April of 1989, appellants filed with the AAA demands for the arbitration of disputes they had with Smith Barney over the alleged mismanagement of their accounts. Appellants maintained that the provisions of agreements they had individually entered into with Smith Barney[1] left open their option of electing AAA arbitration under Article VIII, Section 2 of the AMEX Constitution--what the parties refer to as the "AMEX Window." The AMEX Constitution provides that members of the exchange "shall arbitrate all controversies arising in connection with their business ... between them and their customers as required by any customer's agreement or, in the absence of a written agreement, if the customer chooses to arbitrate." AMEX Const., Art. VIII, § 1. The AMEX Window states that:
 
 
 3
 Arbitration shall be conducted under the arbitration procedures of this Exchange, except as follows: ...
 
 
 4
 (c) if any of the parties to a controversy is a customer, the customer may elect to arbitrate before the American Arbitration Association in the City of New York, unless the customer has expressly agreed, in writing, to submit only to the arbitration procedure of the Exchange.
 
 
 5
 Id. § 2.
 
 
 6
 The language of the appellants' individual agreements with Smith Barney varied only slightly.[2] The Luckies' Option Account Agreement,[3] and Mooshie's Security Account Agreement provided that:
 
 
 7
 The undersigned agrees that all controversies between the undersigned and Smith Barney and/or any of its officers, directors or employees concerning or arising from (i) any account maintained with Smith Barney by the undersigned; (ii) any transaction involving Smith Barney and the undersigned, whether or not such transaction occurred in such account or accounts; or (iii) the construction, performance or breach of this or any other agreement between us, whether such controversy arose prior, on or subsequent to the date hereof, shall be determined by arbitration before the National Association of Securities Dealers, Inc., the New York Stock Exchange, the American Stock Exchange, or any recognized arbitration facility provided by any exchange and in accordance with the rules of such body then obtaining....
 
 
 8
 Mooshie's Option Account Agreement was substantially the same as the Luckies' Securities Account Agreement, which provided that:
 
 
 9
 Any controversy between Smith Barney and me arising out of or relating to this contract or the breach thereof, or to any transaction involving Smith Barney and myself, shall be settled by arbitration, in accordance with the rules, then obtaining, of the New York Stock Exchange, American Stock Exchange or National Association of Securities Dealers as I may elect....
 
 
 10
 Doris Kahn entered into a Vantage Account Agreement with Smith Barney, which referred to and was governed by the terms of her securities account agreement with Smith Barney.[4] The securities account agreement provided:
 
 
 11
 Any controversy between Smith Barney and me arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Boards of Arbitration of the New York Stock Exchange, American Stock Exchange or National Association of Securities Dealers as I may elect....
 
 
 12
 The New York Stock Exchange (NYSE), the American Stock Exchange (AMEX) and the National Association of Securities Dealers (NASD) are self-regulatory organizations (SROs) overseen and regulated by the Securities Exchange Commission. The AAA is an independent arbitral forum.
 
 
 13
 After Smith Barney notified appellants that it would not arbitrate before the AAA, the Luckies filed a complaint in Florida state court. They sought a declaratory judgment that they had the right to compel Smith Barney to submit to arbitration before the AAA. Smith Barney filed a motion to dismiss, abate or stay the Florida action. Smith Barney then removed the action to the United States District Court for the Middle District of Florida, invoking that court's diversity jurisdiction. The district court deferred ruling on Smith Barney's motion to dismiss pending the resolution of a similar action filed by Smith Barney in New York state court. In February of 1991, appellants filed another action in the district court--a motion, pursuant to the Federal Arbitration Act, to compel Smith Barney to submit to arbitration before the AAA.
 
 
 14
 On June 7, 1991, after waiting nearly two years for the New York court to resolve the action filed by Smith Barney, the district court in Florida decided to proceed and lifted the stay in the actions brought by appellants. Luckie, 766 F.Supp. at 1117. The court first consolidated the declaratory judgment action brought by appellants and the appellants' motion to compel arbitration. Id. Noting that arbitration agreements are enforceable as normal contracts, the court concluded that the parties' agreements and the provisions of the AMEX Window did not permit the appellants to compel Smith Barney to submit to arbitration before the AAA. Id. at 1119-20. Accordingly, the court denied appellants' motion to compel arbitration before the AAA. Id. Having held that AAA arbitration was not available, the court then granted Smith Barney's motion to dismiss the declaratory judgment action. Id. at 1120. The court entered judgment for the defendant, Smith Barney, in both the motion to compel arbitration and the declaratory judgment action. Id.
 
 
 15
 II. ISSUES ON APPEAL AND CONTENTIONS OF THE PARTIES
 
 
 16
 The issues we address here are (1) whether customers by agreement can limit their ability to elect AAA arbitration under the provisions of the AMEX Constitution and (2) whether the agreements here between the customers and Smith Barney limit arbitration to the three SROs or whether these agreements leave open the option of arbitrating before the AAA.
 
 
 17
 Appellants contend that a customer cannot waive what appellants term the right to select AAA arbitration under the AMEX Window. Alternatively, they argue that a customer and a broker can eliminate the choice of AAA as an arbitration forum only by language which limits arbitration to the AMEX only.
 
 
 18
 Smith Barney argues that these arbitration provisions of the customer agreements are enforceable and close the AMEX Window. Smith Barney points to the language of the customer agreements--which provide either expressly for arbitration before the three SROs or for arbitration "in accordance with the rules of" the three SROs--to support its contention that appellants have agreed to arbitrate before the NYSE, AMEX or NASD.[5]
 
 III. STANDARD OF REVIEW
 
 19
 Where, as here, the district court examines and construes a contract without reference to extrinsic evidence, its interpretation of that contract involves only questions of law. Securities Exchange Commission v. Elliott, 953 F.2d 1560 (11th Cir.1992). Accordingly, we review de novo the district court's denial of this motion to compel arbitration. See Tays v. Covenant Life Insurance, 964 F.2d 501, 502 (5th Cir.1992); Saari v. Smith Barney, Harris Upham & Co., 968 F.2d 877, 879 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 494, 121 L.Ed.2d 432 (1992).
 
 IV. DISCUSSION
 
 20
 The Federal Arbitration Act, the statute under which appellants seek to compel Smith Barney to arbitrate before the AAA, provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2 (West 1970). The Arbitration Act also authorizes federal district courts to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id. § 4.
 
 
 21
 The United States Supreme Court has noted that the Arbitration Act was "intended to 'revers[e] centuries of judicial hostility to arbitration agreements,' by 'plac[ing] arbitration agreements "upon the same footing as other contracts." ' " Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 225-26, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (citation omitted) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 510-11, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974)). This court has explained that "[a]lthough there is a presumption in favor of arbitration, the parties will not be required to arbitrate where they have not agreed to do so." Goldberg v. Bear, Stearns & Co., 912 F.2d 1418, 1419 (11th Cir.1990) (citation omitted). The Federal Arbitration Act " 'simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.' " Id. at 1420 (quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989)).
 
 
 22
 In determining the import of the agreements of the parties here, we find particularly persuasive the Second Circuit's decisions in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis, 903 F.2d 109 (2d Cir.1990), and PaineWebber, Inc. v. Rutherford, 903 F.2d 106 (2d Cir.1990). In Georgiadis, appellant sought to compel arbitration of his dispute with Merrill Lynch before the AAA. The arbitration provision of his agreement with Merrill Lynch provided that disputes " 'shall be settled by arbitration only before the [NASD, NYSE] or an Exchange located in the United States upon which listed options transactions are executed.' " Georgiadis, 903 F.2d at 111. The Second Circuit held "that the arbitration provision of the AMEX Constitution may be superseded by a more specific customer agreement between the parties, and that the parties here closed the AMEX Window by agreement." Id. at 114.
 
 
 23
 The claim in Rutherford was similar to that in Georgiadis except that the customer agreement in Rutherford provided that arbitration be " 'in accordance with the rules, then obtaining, of either the Arbitration Committee of the [NYSE, AMEX, NASD] or where appropriate, Chicago Board Operations Exchange or Commodity Futures Trading Commission.' " Rutherford, 903 F.2d at 107-08. The Second Circuit reiterated its Georgiadis holding that customer agreements could supersede the AMEX Window and held that the language of Rutherford's customer agreement "should be construed simply as an agreement to arbitrate before one of the SROs rather than the AAA." Id. at 108. The language of the customer agreements in Georgiadis and Rutherford does not differ meaningfully from the language of the customer agreements we examine here.[6]
 
 
 24
 Before turning to the language of the agreements relevant here, we briefly address appellants' contention that customers cannot "contract away" their option under the AMEX Constitution of electing arbitration before the AAA. Although appellants have presented reasons why they deem AAA arbitration preferable to arbitration before the three SROs, they have not presented any arguments that persuade this court that the parties cannot agree to submit their disputes to specific arbitral fora. We join the Second Circuit in holding that "the arbitration provision of the AMEX Constitution may be superseded by a more specific customer agreement between the parties." Georgiadis, 903 F.2d at 108. Cf. Roney & Co. v. Goren, 875 F.2d 1218 (6th Cir.1989) ("A forum selection clause in an arbitration agreement, just like any other contract provision, is entitled to complete enforcement absent evidence that the contract was procured through fraud or excessive economic power.").
 
 
 25
 We now turn to the agreements in this case. Appellants Luckie, Satterfield and Mooshie have agreed with Smith Barney that disputes "shall be determined by arbitration before" the NYSE, AMEX or NASD. Appellants Luckie and Mooshie have also agreed with Smith Barney that disputes "shall be settled by arbitration, in accordance with the rules of" the NYSE, AMEX or NASD. Appellant Kahn has agreed with Smith Barney to arbitration "in accordance with the rules, then obtaining, of either [of] the Boards of Arbitration" of the three SROs. Through these agreements, appellants and Smith Barney have agreed to submit disputes to arbitration before the three SROs--the NYSE, AMEX and NASD. They have not agreed to submit disputes to arbitration before the AAA; they have closed the AMEX Window by agreement. Appellants may elect to submit disputes to arbitration before the NYSE, AMEX or NASD, but they cannot compel Smith Barney to submit to AAA arbitration.
 
 V. CONCLUSION
 
 26
 We hold that the arbitration provisions of a more specific customer agreement can supersede the arbitration provisions of the AMEX Constitution, namely the AMEX Window. Here, the appellants have agreed to arbitrate their disputes with Smith Barney "before" and/or "in accordance with the rules of" the NYSE, AMEX or NASD. Appellants, therefore, cannot compel Smith Barney to submit to arbitration before the AAA. Accordingly, we AFFIRM the district court in all respects.
 
 
 
 *
 Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 Appellant Jere Hughes had not entered into a separate agreement with Smith Barney, but was a signatory on Mooshie's account
 
 
 [2]
 These agreements are found in the record as exhibits to Smith Barney's motion to dismiss, abate or stay the appellants' action for declaratory judgment and as exhibits to Smith Barney's response to appellants' motion to compel arbitration
 
 
 [3]
 Satterfield actually entered into two option account agreements with Smith Barney. One contained the language quoted here. The other was substantially similar except that it limited him to arbitration before the NYSE or the NASD in accordance with the rules then obtaining
 
 
 [4]
 Appellants argue on appeal that Smith Barney failed to produce a customer agreement between Smith Barney and Doris Kahn and that she therefore "apparently has no customer agreement." Initial Brief of Appellants at 7. The record indicates that Smith Barney submitted to the district court copies of a Vantage Account Agreement signed by Kahn. This agreement expressly stated that it was governed by the provisions of the security account agreement between Kahn and Smith Barney. Smith Barney also submitted to the district court a copy of a blank, standard security account agreement in use at the time Kahn signed her Vantage Account Agreement. At no time did Kahn argue before the district court that these documents did not accurately reflect her agreement with Smith Barney. Further, Kahn, in the appellants' motion for reconsideration of the district court's order, did not challenge the factual basis of the district court's order. We will not address on appeal an issue not raised before the district court. See Lattimore v. Oman Construction, 868 F.2d 437, 439 (11th Cir.1989)
 
 
 [5]
 Smith Barney also argues that, if this court holds that appellants may pursue AAA arbitration, it should also hold that New York City is the proper venue for such arbitration. Appellants respond that venue should not be decided by this court, but rather should be left to the arbitrator. Because we hold that AAA arbitration is not appropriate here, we need not address these arguments
 
 
 [6]
 Appellants direct our attention to Cowan & Co. v. Anderson, 76 N.Y.2d 318, 559 N.Y.S.2d 225, 558 N.E.2d 27 (1990), wherein the New York Court of Appeals held that a customer agreement providing for arbitration in accordance with the rules then in effect of the three SROs left open the option of electing AAA arbitration through the AMEX Window. We find the language in the present agreements closer to the language used in the Georgiadis and Rutherford agreements. Appellants concede that these cases are not distinguishable from the present case. See Initial Brief of Appellants at 28. We choose to follow the logic of the Second Circuit