UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 99-1220
(CA-98-592-F)

Smith Barney, etc., et al,

Plaintiffs - Appellants,

versus

Critical Health Systems, etc., et al,

Defendants - Appellees.

O R D E R

The court amends its opinion filed May 11, 2000, as follows:

On the cover sheet, section 4 -- the word "Argued" is inserted before the February 29, 2000, date.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SMITH BARNEY, INCORPORATED,
formerly known as E. F. Hutton &
Company, Inc., a Securities Broker
Dealer Incorporated in DE; LEHMAN
BROTHERS, INCORPORATED, a
Securities Broker Dealer
Incorporated in DE,
Plaintiffs-Appellants,

v.

CRITICAL HEALTH SYSTEMS OF NORTH
CAROLINA, INCORPORATED OF RALEIGH,

No. 99-1220

North Carolina, formerly known as
Wake Anesthesiology Associates,
Incorporated; WAKE
ANESTHESIOLOGY, INCORPORATED
MONEY PURCHASE PENSION PLAN, of
Raleigh, North Carolina; WAKE
ANESTHESIOLOGY PROFIT SHARING
PLAN, of Raleigh, North Carolina;
PETER MODROW, of Raleigh, North
Carolina,
Defendants-Appellees.

Appeal from the United States District Court

for the Eastern District of North Carolina, at Raleigh.
James C. Fox, District Judge.

(CA-98-592-F)

Argued: February 29, 2000

Decided: May 11, 2000

Before WILKINSON, Chief Judge, MOTZ, Circuit Judge, and
James R. SPENCER, United States District Judge
for the Eastern District of Virginia, sitting by designation.

_____

Reversed and remanded by published opinion. Chief Judge Wilkinson
wrote the opinion, in which Judge Motz and Judge Spencer joined.

_____

**COUNSEL**

**ARGUED:** David G. Russell, PARKER, HUDSON, RAINER &
DOBBS, Atlanta, Georgia, for Appellants. Teri Louise DiGiulian,
BEDZOW, KORN, BROWN, MILLER & ZEMEL, P.A., Aventura,
Florida, for Appellees. **ON BRIEF:** Nancy H. Baughan, PARKER,
HUDSON, RAINER & DOBBS, Atlanta, Georgia; Eugene Boyce,
Philip R. Isley, BOYCE & ISLEY, P.A., Raleigh, North Carolina, for
Appellants. Robert B. Miller, BEDZOW, KORN, BROWN, MILLER
& ZEMEL, P.A., Aventura, Florida; Peter J. Sarda, WALLACE,
CREECH & SARDA, L.L.P., Raleigh, North Carolina, for Appellees.

_____

**OPINION**

WILKINSON, Chief Judge:

Critical Health initiated arbitration proceedings against Smith Bar-
ney before the American Arbitration Association (AAA). Smith Bar-
ney seeks to enjoin the AAA proceedings because a customer
agreement between the parties provides that controversies shall be
"settled by arbitration, in accordance with the rules then in effect of
the [NASD, NYSE, or AMEX]." Because the parties have nowhere
mentioned the AAA in their agreement, we hold that arbitration may
proceed only before one of the specified fora. We therefore reverse
and remand.

I.

This case concerns the interpretation of a choice of forum clause
in an agreement between Critical Health and Shearson Lehman Hut-

2

ton (Smith Barney is the successor to these accounts). In the early 1980s, Critical Health signed a client agreement that provided:

> This agreement shall be governed by the laws of the State of New York without giving effect to the choice of law or conflict of laws provision thereof. Any controversy arising out of or relating to any of my accounts . . . shall be settled by arbitration, in accordance with the rules then in effect of the NASD, or the Boards of Directors of the NYSE or the American Stock Exchange, Inc., as I may elect.

The agreement mentions arbitration in accordance with the rules of three self-regulatory organizations (SROs), the National Association of Securities Dealers (NASD), the New York Stock Exchange (NYSE), and the American Stock Exchange (AMEX). The American Arbitration Association (AAA) is not mentioned in the arbitration agreement.

In April 1998, Critical Health instituted an arbitration proceeding against Smith Barney before the AAA alleging, inter alia, violations of industry rules, fraud, breach of fiduciary duty, negligence, and failure to supervise. These claims were based on transactions as far back as the early 1980s. The AAA assumed jurisdiction under the "AMEX Window." The AMEX Window is created by a provision in the AMEX Constitution that states "the customer may elect to arbitrate before the American Arbitration Association in the City of New York, unless the customer has expressly agreed, in writing, to submit only to the arbitration procedure of the [AMEX]." AMEX Const. art. VIII, § 2(c) (1995). The AAA refused to stay the arbitration proceeding without a court order.

Smith Barney then sued for injunctive and declaratory relief in the United States District Court for the Eastern District of North Carolina. Smith Barney alleges that it may be irreparably injured if the dispute proceeds before the AAA, because the AAA rules contain no limitations period for Critical Health's claims. By contrast, the NASD, NYSE, and AMEX arbitration rules all provide that claims based upon transactions that occurred more than six years before the arbitration was filed are not eligible for arbitration. Critical Health's claims arise from transactions and occurrences from the early 1980s and

3

likely would not be eligible for arbitration under the rules of the three SROs. The district court nonetheless denied Smith Barney's motion for a preliminary injunction, finding that the "AMEX Window" allows arbitration before the AAA in North Carolina. Smith Barney now appeals.

II.

We review de novo the district court's conclusions regarding the arbitrability of the dispute between Smith Barney and Critical Health. See American Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 91 (4th Cir. 1996).

Federal law governs the construction of contract language concerning arbitrability. See 9 U.S.C. § 2 (1994) (Federal Arbitration Act (FAA) regulates contracts "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract."); Porter Hayden Co. v. Century Indem. Co., 136 F.3d 380, 382 (4th Cir. 1998); American Recovery, 96 F.3d at 92; see also Weiner v. Gutfreund (In re Salomon Inc. Shareholders' Derivative Litigation), 68 F.3d 554, 559 (2d Cir. 1995) ("Once a dispute is covered by the [FAA], federal law applies to all questions of interpretation, construction, validity, revocability, and enforceability." (internal quotation marks omitted)).**1** The strong federal policy in favor of arbitration is by now well-established. See, e.g., Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987). The FAA makes clear that arbitration agreements "shall be valid, irrevocable,

_____

**1** Critical Health makes much of the fact that the agreement states it "shall be governed by the laws of the State of New York." Under New York law the AMEX Window remains open. See Cowen & Co. v. Anderson, 558 N.E.2d 27, 29-30 (N.Y. 1990). But while New York decisional law governs the substantive principles of any dispute, federal law still governs the interpretation of the arbitration agreement. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 64 (1995) (considering a similar choice of law provision in an arbitration contract and finding that "the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration"). Because arbitration contracts must be construed in accordance with federal law, we are not bound by New York state decisions.

4

and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Critical Health maintains that the agreement does not specify the exclusive fora for arbitration but only requires that the "rules" of the NASD, NYSE, or AMEX be followed in any arbitration. Critical Health's argument centers on the AMEX Window, which allows customers of the AMEX to arbitrate before the AAA, unless they have agreed in writing to submit only to the arbitration procedures of the AMEX. See AMEX Const. art. VIII, § 2(c). Critical Health maintains that because the AMEX Window is a provision in the AMEX Constitution, it is a "rule" of the AMEX and should be followed here. The AMEX Window would allow Critical Health to arbitrate before the AAA because the parties have not agreed to submit disputes only to the AMEX. Critical Health argues that the AMEX Window is incorporated into its agreement and therefore that arbitration should be allowed to proceed before the AAA.

This argument, however, contravenes the plain language of the contract. The agreement provides that "[a]ny controversy arising out of or relating to any of my accounts . . . shall be settled by arbitration, in accordance with the rules then in effect of the NASD, or the Boards of Directors of the NYSE or the American Stock Exchange, Inc." The agreement specifies that arbitration may take place according to the rules of three SROs. It does not mention any other organization and does not specifically provide for arbitration before the AAA. Under the principle of expressio unius est exclusio alterius, arbitration is limited to the three prescribed fora.

Critical Health's argument has also been rejected by all circuit courts that have considered the issue.**2** Courts have interpreted similar

_____

**2** Most district courts have likewise found the AMEX Window closed. See, e.g., Conroy v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 899 F. Supp. 1471, 1474 (W.D.N.C. 1995); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. King, 804 F. Supp. 1512, 1514 (M.D. Fla. 1992); Bear Stearns & Co. v. N.H. Karol & Assocs., 728 F. Supp. 499, 502-03 (N.D. Ill. 1989) (finding AMEX Window closed by agreement and explaining that the "rules" of the AMEX do not encompass the AMEX Constitution). But see Shearson Lehman Bros., Inc. v. Brady, 783 F. Supp. 1490,

5

agreements as specifying the exclusive arbitral fora. See Luckie v. Smith Barney, Harris Upham & Co., 999 F.2d 509, 514 (11th Cir. 1993); PaineWebber, Inc. v. Rutherford, 903 F.2d 106, 108 (2d Cir. 1990). In Rutherford, the Second Circuit considered a very similar agreement and held that the AMEX Window may be superseded by a more specific customer agreement between the parties. 903 F.2d at 108. The agreement in Rutherford provided that disputes would be "settled by arbitration, in accordance with the rules, then obtaining, of either the . . . [NYSE, AMEX, NASD], or where appropriate, Chicago Board Options Exchange or Commodity Futures Trading Commission." Id. at 107-08 (emphasis added). The court compared this agreement with one where the customer agreed to arbitrate "only before" several SROs. See id. at 108 (discussing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis, 903 F.2d 109, 111-12 (2d Cir. 1990)). The Second Circuit concluded that there was no real difference between an agreement that provided for arbitration "only before" specified SROs, and an agreement that provided for arbitration "in accordance with the rules" of several SROs. The court found that in both situations the language should be construed as an agreement to arbitrate only before one of the SROs, thus precluding arbitration before the AAA. See id. A contrary holding simply "would allow customers to circumvent their agreements with ease." Id.; see also Weiner, 68 F.3d at 558 (following Rutherford and holding that the court "cannot compel a party to arbitrate before someone other than the NYSE when that party had agreed to arbitrate disputes only before the NYSE").

Similarly, in considering an agreement with language virtually identical to the language in the instant case, the Eleventh Circuit found that the parties had "closed the AMEX Window by agreement." Luckie, 999 F.2d at 514. There were two agreements at issue in Luckie -- one provided for arbitration "before" the three SROs and the other for arbitration "in accordance with the rules" of the three SROs. Id. at 511. The court held that through these agreements the

_____

1495-96 (D. Mass. 1991) (finding that the AMEX Window remains open, but without analysis of contrary authority); Wade v. Prudential Securities, Inc., 1994 WL 124428, at *4 (N.D. Cal. 1994) (finding that New York law controls, and therefore the AMEX Window remains open).

6

parties had "agreed to submit disputes to arbitration before the three SROs . . . . They have not agreed to submit disputes to arbitration before the AAA; they have closed the AMEX Window by agreement." Id. at 514.

We join the Second and Eleventh Circuits in holding that the AMEX Window can be superseded by a more specific agreement. Here the agreement provides that arbitration will proceed in accordance with the rules of the three SROs. Notably, the agreement makes no mention whatsoever of the AAA. Where the parties have agreed explicitly to settle their disputes before particular arbitration fora, that agreement must control. See Georgiadis, 903 F.2d at 113. To hold otherwise would require us to impose a strained construction on a straightforward agreement. It is far better to interpret the agreement based on what is specified, rather than attempt to incorporate other remote rules by reference. Here Critical Health has the choice of three fora. We can see no reason to pass over the three specified fora and allow arbitration to proceed in a fourth unspecified arena.

The choice of forum is of consequence here because the claims asserted by Critical Health are based on transactions commencing in the early 1980s. The AAA rules would allow such claims to proceed. By contrast, the NASD, NYSE, and AMEX arbitration rules provide that claims based on transactions that occurred more than six years before arbitration was filed are not eligible for arbitration. Smith Barney was entitled to rely upon the fact that its exposure to stale claims was limited by the rules of the NYSE, NASD, and AMEX. Although Critical Health may now rue the bargain it struck, this is not a sufficient reason for this court to rewrite the agreement against Smith Barney.

III.

Critical Health cannot arbitrate its claims before the AAA where it has already agreed to submit disputes to arbitration before the NYSE, NASD, or AMEX. We thus reverse the judgment of the district court and remand with directions that the district court enforce the choice of forum clause in the arbitration agreement.

REVERSED AND REMANDED