■ Steven Croman, Appellant-Respondent, v Leonard Wacholder et al., Respondents-Appellants. [769 NYS2d 219]—

Order, Supreme Court, New York County (Alice Schlesinger, J.), entered October 23, 2002, which, to the extent appealed from as limited by the briefs, granted defendants' motion for summary judgment dismissing the complaint, dismissed the individual defendants' counterclaim for damages, and denied plaintiff's cross motion for preliminary injunction, unanimously affirmed, without costs.

The dispute in this case arises out of a purported contract of sale to plaintiff of the shares of stock of Hasad Realty Corporation (Hasad) by the individual defendants (the Sellers), Hasad's sole shareholders.

Hasad's primary, if not sole, asset is real property on East 1st Street in Manhattan. That property is subject to a lease between Hasad, as landlord, and a tenant, Market Purveyor Co., Inc. (Market Purveyor), a corporation owned principally by defendant Leonard Wacholder's son, with Leonard Wacholder holding a minority interest. Neither Market Purveyor nor its principal shareholder was a party to the negotiations regarding the sale of Hasad stock. In connection with the purchase, plaintiff sought a modification of the Market Purveyor lease which would, among other things, eliminate the tenant's right of assignment without the consent of the landlord.

On May 7, 2001, plaintiff and Sellers executed a contract of sale, pursuant to which Sellers agreed to sell their Hasad shares to plaintiff. Hasad was not a party to the contract, nor was Market Purveyor or its principal shareholder. The contract was drafted by plaintiff's attorney at the time, who handwrote specific changes onto a form agreement. The contract includes a number of representations by the Sellers, including the one at issue in this case, set forth in paragraph 1 (q) of an "Additional Rider" attached to the main body of the contract. That paragraph, which consisted almost entirely of plaintiff's attorney's handwritten changes to the form agreement, provides in relevant part as follows: "The contract is subject to a commercial lease dated 1/18/01, a copy of which is annexed hereto. Prior to closing Seller will *execute* a modifications [*sic*] to the existing commercial lease at the Premises, providing for a ten (10) year term and five (5) year option and market rent with no

right of free assignment or sublet." (Emphasis added.) The contract also includes three merger clauses and a zipper clause, which provide in relevant part as follows:

"**No Other Representations**. Purchaser acknowledges that neither the Seller nor any representative or agent of the Seller has made any representation or warranty (expressed or implied) regarding the Corporation, or any matter or thing affecting or relating to this agreement, except as specifically set forth in this agreement. Seller shall not be liable or bound in any manner by any oral or written statement, representation, warranty, agreement or information pertaining to the Corporation or this agreement furnished by any broker, agent or other person, unless specifically set forth in this agreement. . . .

"**Acknowledgments of Purchaser**. Purchaser acknowledges that: . . .

"(b) . . . In entering into this contract, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or any agent, employee or other representative of Seller or by any broker or any other person representing or purporting to represent Seller, which are not expressly set forth in this contract, whether or not any such representations, warranties or statements were made in writing or orally. . . .

"**Entire Agreement**. This agreement contains all of the terms agreed upon between Seller and Purchaser with respect to the subject matter hereof. This agreement has been entered into after full investigation. All prior oral or written statements, representations, promises, understandings and agreements of Seller and Purchaser are merged into and superseded by this agreement which alone fully and completely express [*sic*] their agreement. . . .

"**Changes Must Be In Writing**. This agreement may not be altered, amended, changed, modified, waived or terminated in any respect or particular unless the same shall be in writing signed by the party to be bound."

The day after the agreement, as drafted, was executed, plaintiff's attorney sent Sellers a "revised" document, which he characterized as a " 'cleaned-up' agreement." The revised agreement, among other things, changed paragraph 1 (q) of the Additional Rider to read, in relevant part, that "[p]rior to closing, Seller will *obtain* a modification to the existing commercial lease at the premises . . . ." (Emphasis added.) The revised agreement was never executed by the Sellers.

Although the Sellers did ask the tenant to execute the

proposed lease modification, Market Purveyor adamantly refused to do so, as was its right. The Sellers executed the lease modification as required by the explicit terms of the written and executed contract of sale and provided a copy to plaintiff. The unilaterally executed modification was rejected by plaintiff and he refused to consummate the sale. Sellers' offer to proceed with the sale without the lease modification was rejected by plaintiff, and, although the signed agreement entitled Sellers to keep the $57,000 deposit paid by plaintiff in the event of his default, Sellers refunded the deposit to plaintiff. Plaintiff kept the $57,000, and commenced the instant action for specific performance or damages, alleging that the contract of sale obligated Sellers to obtain the lease modification from Market Purveyor and that their failure to do so constituted a breach of the agreement. Sellers, in response, counterclaimed for the return of the $57,000 deposit, asserting that the contract required only that Sellers execute the modification, which they had done, and that plaintiff had breached the agreement by refusing to consummate the sale. The foregoing facts are undisputed.

The IAS court granted Sellers' motion for summary judgment to the extent it sought dismissal of the complaint, but denied it to the extent it sought judgment on Sellers' counterclaim for a return of the $57,000 deposit. The court also denied plaintiff's cross motion for a preliminary injunction precluding Sellers from selling or encumbering Hasad or the property owned by Hasad.

Plaintiff's contention that the contract is ambiguous is unsupportable. There is nothing ambiguous in the terms used in the agreement and, absent a clear ambiguity, the meaning of a contract is "to be determined from the language employed by the parties under accepted rules of contract law" (*Matter of Cowen & Co. v Anderson*, 76 NY2d 318, 321 [1990]). Moreover, the IAS court was correct in determining that any ambiguity would have to be construed most strongly against plaintiff, since it was plaintiff's counsel who drafted the agreement (*see e.g. id.* at 323; *see also Jacobson v Sassower*, 66 NY2d 991, 993 [1985]; *67 Wall St. Co. v Franklin Natl. Bank*, 37 NY2d 245, 249 [1975]; *Matter of PaineWebber, Inc. v Webb*, 155 AD2d 938 [1989]).

Plaintiff further contends that there are unresolved issues of fact as to whether Sellers represented, prior to the execution of the contract of sale, that they would and could obtain a lease modification from the tenant; whether Sellers exerted sufficient efforts to obtain the modification from the tenant; whether the tenant would have executed the modification if Sellers had offered sufficient incentives to do so; whether the tenant was

"used" by Sellers to subvert the contract; and as to the degree of control Sellers may have exercised over the corporate tenant. However, these issues are immaterial to the present dispute or are unsupported by anything in the record.

As an initial matter, even if, as plaintiff contends, Sellers represented, during the negotiations leading up to the execution of the contract of sale, that they could and would obtain Market Purveyor's agreement to the lease modification, the agreement explicitly states that "[a]ll prior oral or written statements, representations, promises, understandings and agreements of Seller and Purchaser are merged into and superseded by this agreement which alone fully and completely express [*sic*] their agreement." In addition, as the IAS court determined, Sellers had no authority or power to force the tenant to agree to the modification, and the relationship between Market Purveyor's principal shareholder and one of Hasad's shareholders does not alter that fact. Plaintiff, by rejecting Sellers' offer to conclude the sale without the lease modification, made the modification a condition of the contract of sale, a condition that proved and was unfulfilled, thus abrogating the contract (*see e.g. AD 1619 v Colony Records & Radio Ctr.*, 305 AD2d 195 [2003]).

While it appears undisputed that Sellers did attempt to convince the tenant to sign the proposed lease modification, the degree of Sellers' efforts to do so is irrelevant since, as noted, the executed contract of sale did not require Sellers to obtain the tenant's agreement, despite plaintiff's after-the-fact attempt to rewrite the agreement (*see e.g. Knecht v Horrigan*, 290 AD2d 222 [2002]). Further, it is undisputed that one of the Sellers held only a minority interest in the tenant corporation, and the fact that the majority interest was held by that Seller's son does not alter the fact that the tenant was an independent entity, not a party to the contract of sale, and not in any way required to acquiesce in a proposed lease modification that was detrimental to its own interest. Moreover, plaintiff has produced absolutely nothing to support his assertion that the tenant may have been "used" by Sellers to subvert the contract of sale. Indeed, Sellers' offer to complete the sale if plaintiff wished to go forward without the lease modification belies any such contention and demonstrates, if anything, that plaintiff made obtaining the lease modification a condition of the contract. Plaintiff's unsubstantiated assertion of Sellers' purported "sabotage" is not sufficient to raise a triable issue or to defeat Sellers' motion to dismiss the complaint (*see e.g. Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *Kuzyns v City of New York*, 191 AD2d 169 [1993]).

Plaintiff also argues that giving effect to the words used in the agreement would lead to the "absurd" result that defendants' only obligation was to execute a worthless document. However, there is no issue here of unequal bargaining power or of defendants exercising some unfair advantage over plaintiff. Plaintiff was represented by an attorney; indeed, as noted, his attorney drafted the agreement. If plaintiff assumed that Sellers would be able to convince the tenant to agree to the lease modification, it was that untested assumption that led to the "absurd" result, not the written language in the agreement, particularly since plaintiff was well aware that the tenant was not a party to the negotiations or the contract of sale. In these circumstances, it is not for the court to save plaintiff from the results of his own agreement—absurd or not—and there is no basis to accept plaintiff's after-the-fact contention that the written agreement means something other than what it says.

With regard to the Sellers' counterclaim, we agree with the IAS court that, at best, plaintiff's "misunderstanding" of what the plain language of the contract of sale meant led to a failure of a meeting of the minds and thus no agreement at all. No agreement means there could be no breach—by either party. In fact, Sellers apparently took that position when they returned plaintiff's deposit and only changed their position after plaintiff filed his complaint in this action.

Accordingly, the order of the IAS court, to the extent appealed and cross-appealed, is affirmed. Concur—Nardelli, J.P., Tom, Rosenberger and Gonzalez, JJ.