■ MADISON LIQUIDITY INVESTORS 119, LLC, Appellant, v PATRICIA HOPE GRIFFITH, Respondent. [869 NYS2d 496]—

In this breach of contract action, defendant Patricia Griffith was employed by Inacom as senior vice-president of marketing and engagement services. Between 1999 and 2000, she entered into retention and other compensation and benefit agreements with Inacom. On June 16, 2000, Inacom, its affiliates, and other associated debtors filed for chapter 11 bankruptcy protection,

and on or about August 31, 2000, Griffith filed a claim in the debtors' cases. Two years later Griffith and Inacom stipulated to her employee claim in the gross amount of $839,494.13, which was so ordered by the bankruptcy court on November 21, 2002.

On November 11, 2002, Griffith and Madison Liquidity Investors, LLC (Madison)* entered into a transfer of claim agreement for the purchase of Griffith's wage claim. The terms of this agreement stated a purchase price of $71,357.00 and 50% of any distributions received by Griffith in excess of 12% of the value of the claim. Madison paid Griffith $71,357.00 on November 21, 2002. This agreement was superseded by an amended transfer of claim (agreement) on June 18, 2003. The terms increased the purchase price to $130,121.59 and 50% of distributions in excess of 28% of the value of the claim. Madison paid defendant an additional $58,764.69 representing the purchase price under the amended agreement.

The agreement required that Griffith "sell, convey, transfer and assign" to Madison all "claims," "causes of action," and "cash, securities or other property distributed, received or payable." The agreement did not include any specific provisions for the treatment of tax withholding.

Distributions, including the wage claim, were subject to the Inacom Liquidation Plan (Plan) dated March 24, 2003 and approved by the bankruptcy court on May 23, 2003. The express terms of the Plan stated: "[t]o the extent applicable, the Plan Administrator will comply with all tax withholding and reporting requirements imposed . . . and all distributions pursuant to this Plan will be subject to such withholding and reporting requirements." Consequently, the disbursements made to Madison reflected amounts withheld for income taxes. Madison was unsuccessful in its attempts to secure reimbursement from Griffith for the withheld taxes. It then refused to pay Griffith her agreed upon share of the distributions or to provide any accounting required by the agreement.

On or about June 30, 2004, Madison commenced the instant suit seeking recovery of $71,467.51, representing the total taxes withheld as of that date. Griffith counterclaimed for the amounts owed to her by Madison for the additional distributions. Both parties also sought attorneys' fees and costs.

On April 23, 2007, the court granted Griffith's motion for summary judgment dismissing Madison's complaint and on her

---

* The contract with Griffith was executed by Madison Liquidity Investors, LLC, and this suit is brought by its assignee, Madison Liquidity Investors 119, LLC.

counterclaim for additional distributions and attorneys' fees. Madison's cross motion for summary judgment was denied.

On appeal, the crux of Madison's argument is that Griffith did not transfer *all* of the distributions due under the agreement, because she did not transfer the tax monies that were withheld. Madison first argues that the taxes were improperly withheld by Inacom because Griffith never had constructive receipt of, or control over, the distribution. Since she never received the money, the taxes should not have been considered payable by Inacom. Alternatively, Madison argues that even if taxes were properly withheld, Griffith, as the beneficiary of the withholding, should reimburse Madison for the tax deductions. It bolsters this argument by asserting that Griffith was credited for the withheld taxes and benefitted from receiving those monies in subsequent tax refunds issued for the years 2000-2005.

Griffith asserts that the motion court appropriately held that according to applicable tax law, where an assignment of income is made after it is earned, the income is constructively received by the assignor when it is received by the assignee. Therefore, the distributions were constructively received by Griffith, and Inacom was required by law and the Plan to withhold income taxes. Griffith further contends that the motion court ruled correctly in deciding that Madison, as the assignee of a wage claim, is subject to the burdens of the claim including tax obligations.

As a threshold matter, the wages, which are characterized as earned income, are clearly taxable, and Griffith, as assignor, is obligated to pay taxes on any distributions when they are made to Madison (see *Helvering v Eubank*, 311 US 122 [1940]). As such, Madison's claim that the taxes were improperly withheld on Griffith's behalf is unavailing.

Further, as Griffith's assignee, Madison "stands in [her] shoes" (*Wald v Marine Midland Bus. Loans*, 270 AD2d 73, 74 [2000]). The assignment grants Madison the same rights and interests with regard to the wage claim to which Griffith had been entitled with all of its "infirmities, equities and defenses" (*Trans-Resources, Inc. v Nausch Hogan & Murray*, 298 AD2d 27, 30 [2002]). Madison's rights were derivative and " 'an assignee never stands in any better position than his assignor' " (*TPZ Corp. v Dabbs*, 25 AD3d 787 [2006], quoting *Matter of International Ribbon Mills [Arjan Ribbons]*, 36 NY2d 121, 126 [1975]).

It is clear that Griffith did not actually receive the distributions because they were paid directly to Madison. The withholding of the taxes and their payment to the state and federal governments was solely in the province of the bankruptcy court.

There is nothing in the record to support Madison's reasoning that as a "beneficiary" of the tax withholding, Griffith received a windfall to which she was not entitled. This wage claim was subject to income taxation, and Madison, in the absence of specific provisions to the contrary, took assignment of the claim with this burden.

It should also be noted that the Plan, which explicitly set forth the tax payment requirement, was approved by the court almost one month prior to the execution of the agreement giving Madison ample time to discover the terms of the distributions through due diligence. Further, as a sophisticated party in the agreement, Madison should have reasonably anticipated that a wage claim would give rise to tax liability and contracted accordingly. Bankruptcy assignments are Madison's stock-in-trade, and this "deficiency" in an agreement that they drafted is properly construed against them (*Croman v Wacholder*, 2 AD3d 140, 143 [2003]). Madison's claim that it cannot be expected to foresee "every theoretically possible way in which such payments could be . . . diverted," does not excuse them from considering the obvious and logical implications of tax withholding in a wage claim.

As to Griffith's counterclaim, because she is the prevailing party, she is entitled to her contractual share in any distributions in accordance with the express terms. As the prevailing party in this action and by the terms of the agreement, Griffith is also entitled to recovery of attorneys' fees and costs. Concur—Tom, J.P., Saxe, Williams, Catterson and Moskowitz, JJ. [*See* 2007 NY Slip Op 30985(U).]