Shanghai Pearls & Gems, Inc. v Paul (2025 NY Slip Op 01433)

Shanghai Pearls & Gems, Inc. v Paul

2025 NY Slip Op 01433

Decided on March 13, 2025

Appellate Division, First Department

Scarpulla, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 13, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Tanya R. Kennedy
Barbara R. Kapnick Saliann Scarpulla John R. Higgitt

Index No. 157224/22|Appeal No. 2979|Case No. 2023-04630|

[*1]Shanghai Pearls & Gems, Inc. Doing Business as Ultimate Diamond Co., Plaintiff-Respondent,
v
Aleks Paul et al., Defendants-Appellants.

Defendants appeal from an order of Supreme Court, New York County (Dakota D. Ramseur, J.), entered August 11, 2023, which, to the extent appealed from as limited by the briefs, denied their motion to dismiss the fraudulent conveyance, conversion, and tortious interference with contract claims.

Oved & Oved LLP, New York (Timothy Savitsky and Aaron J. Solomon of counsel), for appellants.
Guzov, LLC, New York (Debra J. Guzov, Philip M. Smith and David J. Kaplan of counsel), for respondent.

Scarpulla, J. 

Defendants appeal from an order of Supreme Court, New York County (Dakota D. Ramseur, J.), entered August 11, 2023, which, to the extent appealed from as limited by the briefs, denied their motion to dismiss the fraudulent conveyance, conversion, and tortious interference with contract claims.
Oved & Oved LLP, New York (Timothy Savitsky and Aaron J. Solomon of counsel), for appellants.
Guzov, LLC, New York (Debra J. Guzov, Philip M. Smith and David J. Kaplan of counsel), for respondent.
Scarpulla, J. This appeal stems from a dispute between precious gemstone traders. Plaintiff Shanghai Pearls & Gems, Inc., doing business as Ultimate Diamond Co., alleges that defendants Essex Global Trading, Inc. and Aleks Paul, Essex's principal, improperly transferred gems they received on consignment from nonparty Diamond Corporation Capital Group, LLC (D&M). The transferred gems included the "Pink Diamond," in which plaintiff held a one-third interest, and the "Kashmir Sapphire."
In early 2019, D&M filed for bankruptcy relief in the Southern District of New York. D&M then brought an adversary proceeding in Bankruptcy Court against defendants and other nominal defendants including plaintiff. D&M alleged that defendants wrongfully exercised self-help and improperly retained the Pink Diamond, the Kasmir Sapphire, and other diamonds to set off D&M loans.
By settlement agreement dated March 1, 2021, D&M settled its claims in the adversary proceeding against Essex and Paul (the Essex Settlement). The Essex Settlement provided for a dismissal with prejudice of all of D&M's claims against Essex and Paul and contained a full release between D&M, Essex and Paul of all claims involving D&M's estate. The Essex Settlement agreement stated that it was "binding on the Parties' successors, transferees, heirs, attorneys, agents, and assigns."
Plaintiff filed an objection to the Essex Settlement on April 27, 2012. However, plaintiff never asserted any claims of its own against defendants in the adversary proceeding. Thereafter D&M and plaintiff entered into a separate settlement agreement (the Ultimate Settlement). As set forth in the Ultimate Settlement, plaintiff agreed to withdraw its objection to the Essex Settlement. In return, plaintiff was permitted to retain 11 pieces of jewelry owned by D&M and previously consigned to plaintiff. The Ultimate Settlement also assigned to plaintiff, "free and clear of all liens, claims and interests" all the Trustee's remaining rights and interests to the Kashmir Sapphire and Pink Diamond.[FN1] In addition, the Ultimate Settlement noted that "it was subject to and conditioned on" the Bankruptcy Court's approval of the Essex Settlement. On June 8, 2022, the Bankruptcy Court approved both the Essex Settlement agreement and the Ultimate Settlement agreement.
Plaintiff then commenced this action. The first amended complaint alleges causes of action for fraudulent conveyance, unjust enrichment, and tortious interference with contractual [*2]relations. The motion court denied defendants' motion to dismiss except as to the unjust enrichment claim, which it dismissed as duplicative of the conversion claim. Defendants now appeal.
The motion court should have dismissed the conversion and tortious interference claims relating to plaintiff's original one-third interest in the Pink Diamond. Defendants satisfied their prima facie burden of showing that the claims are time-barred (see MTGLQ Invs., LP v Wozencraft, 172 AD3d 644, 644-645 [1st Dept 2019], lv dismissed 34 NY3d 1010 [2019]). Both the conversion and tortious interference claims are governed by three-year statutes of limitations (see CPLR 214[3], [4]; Swain v Brown, 135 AD3d 629, 631 [1st Dept 2016]; Turecamo v Turecamo, 55 AD3d 455, 455 [1st Dept 2008]), and plaintiff does not dispute that the latest the claims could have accrued was on May 28, 2019, the date of D&M's bankruptcy filing. Plaintiff commenced this action more than three years later, on August 23, 2022.
Plaintiff fails to raise an issue of fact as to whether the statute of limitations was either tolled or otherwise inapplicable (see Wilson v Southampton Urgent Med. Care, P.C., 112 AD3d 499, 500 [1st Dept 2013]). Plaintiff's contention that the limitations period was tolled by the automatic bankruptcy stay because the Pink Diamond was allegedly property of D&M's estate (see 11 USC § 362[a][3]) is meritless. Plaintiff seeks money damages, not injunctive relief to obtain possession of the Pink Diamond, and plaintiff's one-third interest in that diamond was never the D&M's estate's property (see CenTrust Servs. v Guterman, 160 AD2d 416, 418 [1st Dept 1990]). Moreover, plaintiff's participation as a nominal defendant in the bankruptcy—by which its formal participation was limited to objecting to the Essex Settlement before withdrawing that objection and making its own settlement, never initiating its own adversary proceeding against Essex and Paul—cannot not be deemed "interpos[ing]" a claim under CPLR 203(a).
Plaintiff's claims are also barred by the doctrine of release insofar as based on interests transferred by D&M, and otherwise barred by res judicata. The Ultimate Settlement agreement, plaintiff's agreement with D&M, is the only basis upon which plaintiff may assert any ownership interest in the Kashmir Sapphire and 100% interest — rather than its original one-third interest — in the Pink Diamond. However, the effectiveness of the Ultimate Settlement agreement was conditioned on bankruptcy court approval of the Essex Settlement agreement. That agreement dismissed with prejudice all claims that D&M had asserted against defendants. The released claims sounded in conversion and Debtor and Creditor Law § 273 and were based on allegations of Paul having "lied to" D&M's principal "about having a buyer lined up" and on Essex "grabb[ing]" and refusing to return gems, including the Pink Diamond and Kashmir Sapphire.
Thus, before D&M purported to assign any interest it [*3]had in the Pink Diamond and Kashmir Sapphire to plaintiff in the Ultimate Settlement, it had already released defendants for claims based on defendants converting the gems or receiving them as fraudulent conveyances in the Essex Settlement. The release bars plaintiff from pursuing defendants for any of D&M's purported remaining rights and interests to the Kashmir Sapphire and Pink Diamond assigned to plaintiff, because plaintiff, as "an assignee," cannot "stand[] in any better position than [its] assignor" (Matter of International Ribbon Mills [Arjan Ribbons], 36 NY2d 121, 126 [1975]; see also Madison Liquidity Invs. 119, LLC v Griffith, 57 AD3d 438, 440 [1st Dept 2008]).
Although defendants' settlement with D&M did not release plaintiff's original one-third interest in the Pink Diamond, plaintiff's fraudulent conveyance claims based on that interest should be dismissed because the claims are barred by res judicata. Pursuant to the doctrine of res judicata, a valid final judgment precludes "future actions between the same parties or those in privity with them on any claims arising out of the same transaction or series of transactions . . . , even if based upon different theories or if seeking a different remedy" (Shaoul v Komolov, 224 AD3d 618, 619 [1st Dept 2024] [internal quotation marks and citation omitted]).
A determination that privity exists, in the context of res judicata, must be based on a "flexible analysis" of the relationship between the party and the nonparty in the previous litigation (Gulf LNG Energy, LLC v Eni S.p.A., 219 NYS3d 17, 23 [1st Dept 2024] [internal citation omitted]). This analysis, in turn, requires courts to consider "whether the circumstances of the actual relationship, the mutuality of interests, and the manner in which the nonparty's interest were represented in the earlier litigation established a functional representation such that the nonparty may be thought to have had a vicarious day in court" (Rojas v Romanoff, 186 AD3d 103, 111-112 [1st Dept 2020]).
Here, plaintiff was in privity with D&M vis-À-vis the assignment of the interests in the Pink Diamond and Kashmir Sapphire. D&M's claims against defendants in the bankruptcy proceeding and plaintiff's claims against defendants in this action "are closely related in time, space, motivation, or origin" such that the claims "arise out of the same transaction, and res judicata should apply" (Schwartzreich v E.P.C. Carting Co., 246 AD2d 439, 441 [1st Dept 1998]).
Plaintiff's argument that it owned its fraudulent conveyance claims, and therefore, the trustee could not have released them, is unavailing. Plaintiff could have objected in the bankruptcy proceeding to the trustee's alleged lack of standing to pursue the fraudulent conveyance claims based upon D&M's participation in the transfers. Instead, plaintiff opted not to assert claims of its own in that adversary proceeding. Moreover, not only did plaintiff withdraw its objection in the bankruptcy case and allow [*4]the Essex Settlement to proceed, it even made its own settlement conditional on the bankruptcy court's approval of the Essex Settlement. Considering these facts, plaintiff cannot now litigate the fraudulent conveyance claims that it failed to litigate in the prior action (see Shaoul, 224 AD3d at 619).
Accordingly, the order of Supreme Court, New York County (Dakota D. Ramseur, J.), entered August 11, 2023, which, to the extent appealed from as limited by the briefs, denied defendants' motion to dismiss the fraudulent conveyance, conversion, and tortious interference with contract claims, should be reversed, on the law, without costs, the motion granted, and the complaint dismissed. The Clerk is directed to enter judgment accordingly.
Order Supreme Court, New York County (Dakota D. Ramseur, J.), entered August 11, 2023, which, to the extent appealed from as limited by the briefs, reversed, on the law, without costs, the motion granted, and the complaint dismissed. The Clerk is directed to enter judgment accordingly.
Opinion by Scarpulla, J. All concur.
Kennedy, J.P., Kapnick, Scarpulla, Higgitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 13, 2025

Footnotes

Footnote 1: Apparently, the trustee had obtained the ownership interests of other nonparties in the two gems.